CITIZENS' TELEPHONE COMPANY OF GRAND RAPIDS *v.* FULLER, AUDITOR–GENERAL OF THE STATE OF MICHIGAN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MICHIGAN.

No. 284. Argued May 2, 1913.—Decided June 10, 1913.

Power of exemption from taxation seems to imply the power of discrimination; and in taxation, as in other matters of legislation, classification is within the legislative power—and it may be even to a greater extent.

The numerous decisions of this court reviewed in this opinion illustrate the power of the legislature of the State over the subjects of taxation and the range of discrimination that may be exercised in classification.

The legislature, having the power of classification, has also the power to select the differences on which to base the classification.

The State is not bound to rigid equality by the equal protection provision of the Fourteenth Amendment: classification simply must not be exercised in clear and hostile discrimination between particular persons and classes.

There is a clear and reasonable distinction on which to base a classification for taxation between telegraph and telephone corporations conducting for profit large businesses and having offices and exchanges in cities and villages, and those conducting a very small business for mutual convenience of the incorporators; and so *held* that the Michigan statute taxing such smaller corporations does not deny the larger corporations the equal protection of the laws because it,

exempts corporations having gross receipts of less than five hundred dollars.

Where there has been a constant legislative and executive construction of a provision of the constitution of the State in regard to the title of a statute clearly expressing the object thereof, this court will not, in view of the consequences of striking down legislation, declare a statute invalid on account of defective title where, as in this case, there has been substantial compliance with the requirements of the constitution of the State in that regard.

THE facts, which involve the constitutionality under the Fourteenth Amendment of a statute of Michigan taxing telephone companies and excepting therefrom certain classes thereof, are stated in the opinion.

*Mr. Thomas P. Bradfield* and *Mr. Jacob Kleinhans* for appellant submitted:

An exemption of companies whose gross receipts do not exceed $500 per annum invalidates the act.

Judicial construction cannot enlarge or restrict the obvious meaning of the act. *Atty. Gen'l.* v. *Assessors,* 143 Michigan, 73; *Bate Refrigerator Co.* v. *Sulzberger,* 157 U. S. 37; *Denn* v. *Reed,* 10 Pet. 527; *Gibbons* v. *Ogden,* 9 Wheat. 1; *Leoni* v. *Taylor,* 20 Michigan, 148, 154; *People* v. *Plumstead,* 2 Michigan, 465; *Ry. Co.* v. *Phelps,* 137 U. S. 528; *Swartz* v. *Siegel,* 117 Fed. Rep. 18; *Whipple* v. *Saginaw Judge,* 26 Michigan, 342; *Wilt* v. *Cutler,* 38 Michigan, 189.

A law must operate equally and uniformly and the classification must be based upon some reasonable ground. *Am. Sugar Co.* v. *Louisiana,* 179 U. S. 89, 92; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540; *Cotting* v. *Stockyards Co.,* 183 U. S. 79, 112; *Field* v. *Asphalt Co.,* 194 U. S. 618, 621; *Kentucky R. R. Tax Cases,* 115 U. S. 321, 337; *McLean* v. *Arkansas,* 211 U. S. 539; *Railway Co.* v. *Ellis,* 165 U. S. 150, 160; *St. Louis Cons. Coal Co.* v. *Illinois,* 185 U. S. 203; *S. W. Oil Co.* v. *Texas,* 217 U. S. 114; *State* v. *Haun,* 61 Kansas, 146.

While the legislature has the right to make exemptions, as held in *Supervisors* v. *Auditor Gen'l*, 65 Michigan, 408; *Loan Co.* v. *Detroit*, 136 Michigan, 451; *People* v. *Auditor Gen'l*, 7 Michigan, 84, the power is not absolute and without limitation. 1 Cooley Taxation (3d ed.), 382; *Cotting* v. *Stockyards Co.*, 183 U. S. 79; *Gulf &c. Ry.* v. *Ellis*, 165 U. S. 150; *Railroad Co.* v. *Pennsylvania*, 134 U. S. 237; *Yick Wo* v. *Hopkins*, 118 U. S. 369.

The exemption does not operate to segregate any definite class of telephone companies to the exclusion of all others.

The value of non-assessed properties is substantial.

The object of the act is not expressed in the title and is in conflict with the Michigan constitution. *Atty. Gen'l* v. *Bolger*, 128 Michigan, 355; *Bresler* v. *Delray Investment Co.*, 156 Michigan, 3; *Callaghan* v. *Chipman*, 59 Michigan, 614; *Cooley's Const. Lim.* 143; *Depot Co.* v. *Com'nr of Railroads*, 118 Michigan, 340; *Detroit* v. *Wayne Circuit Judge*, 112 Michigan, 319; *Fish* v. *Stockdale*, 111 Michigan, 646; *In re Hauck*, 70 Michigan, 396; *Pratt Food Co.* v. *Bird*, 148 Michigan, 634; *Wilcox* v. *Paddock*, 65 Michigan, 24.

*Mr. Roger I. Wykes*, with whom *Mr. Grant Fellows* was on the brief, for appellee.

MR. JUSTICE McKENNA delivered the opinion of the court.

Appellant is a telephone company, located in the city of Grand Rapids, in the State of Michigan, where it has 10,000 telephones in use, and by its own and other lines is engaged in the telephone business all over the southern peninsula. It brought this suit to restrain the collection of a tax levied on its property under a certain act of the State of Michigan, on the ground (1) that the act violates

the Fourteenth Amendment of the Constitution of the United States and (2) violates the constitution of the State because the purpose of the act is not expressed in its title.

A demurrer was filed to the bill, which was overruled. An answer was then filed and, after hearing, a decree was entered dismissing the bill. This appeal was then taken directly to this court, the case presenting questions under the Constitution of the United States.

Prior to 1909 telephone companies were taxed under Act No. 179 of the Public Acts of Michigan for the year 1899 (June 23, 1899, Pub. Acts 1899, p. 270), at the rate of 3% on their gross receipts for the year in which the tax was laid. This act also embraced express and telegraph companies. The companies were required to make a report of their gross receipts for the year ending December 1st next preceding such report. The taxes paid were to be in lieu of all other taxes.

Act No. 282 of the Public Acts of 1905 (June 16, 1905, Pub. Acts 1905, p. 439) provided for the assessment of the property of railroads and certain other companies and for the levying of taxes thereon by a State Board of Assessors. The act did not include either telephone or telegraph companies.

In 1909 the legislature passed Act No. 49 (April 28, 1909, Pub. Acts 1909, p. 77), which amended the title and certain sections of the Act No. 282 and provided for the assessment by the State Board of Assessors of the property of telephone companies on an *ad valorem* basis instead of a tax on their gross earnings, as provided by the act of 1899. The act contained this proviso: "Provided, That the property of telegraph and telephone companies whose gross receipts within this State for the year ending June thirty do not exceed five hundred dollars shall be exempt from taxation."

The contention of appellant that the act offends the

equal protection clause of the Constitution is based on
that proviso. It is urged that the proviso makes an un-
just discrimination between companies doing the same
business by the same means and imposes a tax on their
property because the business of one is large and the
other small. "The business is not taxed," it is contended,
"under Act 49. It is the property used in the business,
and it is all of like kind and used for like purposes, and
each dollar's worth should be treated alike." And it is
urged that "it must be remembered that the tax in ques-
tion is a tax *on property* according to its value, and not
a tax on doing the business." This being the insistence
of appellant, that is, that the tax is on property simply,
appellant makes the property, dollar for dollar, the only
basis of comparison between the taxed companies and
the exempt companies, and asserts illegal discrimination.
In other words, treating the tax as one on property, and
this being the purpose of the statute, "each dollar's
worth should be treated alike;" and it is contended, if
each dollar's worth is not treated alike, there is an arbi-
trary classification and hence an illegal classification,
because it has no proper relation to the legislative purpose.

The District Court, however, took a broader view and
considered the inducement of the legislation and its ad-
ministrative possibilities as giving character to its classi-
fication. The court also considered the character of the
taxed and non-taxed lines, their number and comparative
value and the amount of taxes which would be assessed
against them. The court said:

"For the year ending June 30, 1909, 659 corporations,
individuals or associations made the required report. Of
these, 224 showed receipts of more than $500 each, re-
ported property said to have cost $35,000,000.00 and
reported gross receipts of $7,600,000.00. The Board as-
sessed this property at $21,000,000.00 and levied thereon
a total tax of $433,000.00 (in place of the former specific

tax, which would have been $228,000.00). Four hundred and thirty-five of the reports showed receipts of less than $500.00 each. Property belonging to the persons and companies so reporting was not assessed. The cost of this non-assessed property, at the average reported cost per telephone of all reporting companies, would be about $145,000.00; complainants' proof tends to show such cost to be about $250,000.00; $200,000.00 may fairly be assumed as such cost; and upon the comparative basis used with the larger corporations, this exempted property would have been assessed at $120,000.00. If we add an ample allowance for non-reporting, non-taxable property, it still appears that the property which escaped taxation and which forms the basis of the complaint, is not more than one per cent. of the total."

The lines may be divided into two classes, (1) lines owned by appellant and conducted for profit, and (2) lines connected with those of the first class and called sub-licensed companies, rural and roadway. There are 17 to 20 of the sub-licensed companies which operate for a profit. Their lines are connected with the main lines and may extend over a whole county or more. It is testified that the sub-licensed companies run their own business, no control being in the main line. Their lines, it is further testified, were constructed by themselves, and the instruments either leased from the main company or owned by themselves. The contracts with the sub-companies are not all alike. The main line may or may not have investment in the sub-licensed lines.

The "rural" usually belongs to an association of farmers who live along the line. It comprises a switch-board leased by the main or profit-making company to a rural manager, the main company owning the telephones on the line and receiving the entire charge for toll messages, less the manager's commissions for collection. The roadways connected with a "rural" are constructed and owned

by the farmers in the same way as other roadways. The larger portion of "rurals" are contracts with individuals. The percentage of corporations in the roadway and sub-licensed lines is very small.

The "roadway" is a line owned and constructed by farmers connected with a receiving service from an existing exchange of a main line or profit-making company, or of a rural exchange manager.

The profit that is derived from the rural and roadway lines is in the reduced rate for the telephones. The manager gets the difference between what he pays the main company and what he gets from those to whom he rents.

The difference, therefore, between the tax-paying and non-tax-paying companies, or individuals is that the former, as said by the District Court, belong to commercial corporations or enterprises, organized and conducted for the purpose of earning and paying profits as or in the nature of dividends; the latter, the untaxed, are co-operative or farmers' mutual associations, usually unincorporated, conducted at estimated costs and organized primarily to get for the association cheap telephone service.

It is manifest, therefore, that there are marked differences between the taxed and non-taxed companies, and the differences might be pronounced arbitrary if the rule urged by appellant should be applied, that is, that in the taxation of property no circumstance should be considered but its value, or, to use appellant's words, "each dollar's worth should be treated alike." But such rigid equality has not been enforced. In Michigan the legislature has the power of prescribing the subjects of taxation and exemption, notwithstanding the constitution of the State requires the legislature to provide a uniform rule of taxation, except on property paying specific taxes. *The People* v. *The Auditor General*, 7 Michigan, 84; *Board of Supervisors* v. *Auditor General*, 65 Michigan, 408; *National Loan &c.*

*Co.* v. *City of Detroit*, 136 Michigan, 451. The power of exemption would seem to imply the power of discrimination, and in taxation, as in other matters of legislation, classification is within the competency of the legislature. We said in *American Sugar Refining Co.* v. *Louisiana*, 179 U. S. 89, 92, that from time out of mind it has been the policy of this Government to classify for the purpose of taxation, and a discrimination was supported between taxation of producers and manufacturers of products; and yet in *Billings* v. *Illinois*, 188 U. S. 97, 102, we compared the rule with that in *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, where a distinction between buyers of products and the producers of them was held an illegal discrimination.

It may, therefore, be said that in taxation there is a broader power of classification than in some other exercises of legislation. There is certainly as great a power, and the rule appellant urges cannot be adopted. It is inconsistent with the principle of classification and the cases which have explained the principle and the range of its legal exercise.

In *Bell's Gap Railroad Co.* v. *Pennsylvania*, 134 U. S. 232, 237, it was decided that under the power of classification there might be exemption of property dependent upon its species and the rates of excise might be varied upon different trades and products. And it was said that it was safe to say "that the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation." It was pointed out that to give it that effect would destroy the constitutional provision and laws of some of the States which, while enjoining uniformity of taxation, permitted exceptions which were deemed material, and that "it would render nugatory those discriminations which the best interests of society require; which are necessary for the encouragement of needed and useful industries, and the discouragement of intemperance and

vice; and which every State, in one form or another, deems it expedient to adopt."

In *Pacific Express Company* v. *Seibert,* 142 U. S. 339, a distinction, for taxing purposes, between express companies which owned their own means of transportation and those who engaged for hire a railroad or steamship company to transport their merchandise, was supported. The range of classification for taxing purposes which was expressed in *Bell's Gap Railroad Company* v. *Pennsylvania* and *Home Insurance Co.* v. *New York,* 134 U. S. 594, 606, 607, was approved. These cases and others were cited in *Michigan Central Railroad Company* v. *Powers,* 201 U. S. 245, 293, for the same principle of classification and its application to taxation. It was said, "There is no general supervision on the part of the Nation over state taxation, and in respect to the latter the State has, speaking generally, the freedom of a sovereign both as to objects and immunities. And, further, quoting from the opinion of the lower court, it was said, "It is enough that there is no discrimination in favor of one against another of the same class, and the method for the assessment and collection of the tax is not inconsistent with natural justice."

In *Travelers' Insurance Co.* v. *Connecticut,* 185 U. S. 364, a law of the State was sustained which imposed a tax on the stock of non-residents in corporations and exempted the stock of residents.

In *King* v. *Mullins,* 171 U. S. 404, 435, a distinction was made in the taxing system of the State between tracts of 1000 acres or less and tracts of more than 1000 acres. It was sustained.

In *Consolidated Coal Co.* v. *Illinois,* 185 U. S. 203, a law providing for the inspection of mines was held not unconstitutional by reason of its limitation to mines where more than five men were employed at any one time. See also *McLean* v. *Arkansas,* 211 U. S. 539.

In *New York, N. H. & H. R. R. Co.* v. *New York,* 165

U. S. 628, a law requiring railroads to heat their passenger coaches but exempting roads of less than fifty miles in length was declared not unconstitutional and discriminatory. To like effect is *Dow* v. *Beidelman,* 125 U. S. 680, where a classification of railroads by their length in fixing the rate of passengers' fare was sustained.

In *Postal Telegraph Cable Co.* v. *Adams,* 155 U. S. 688, a tax was graduated according to the amount and value of the property measured by miles, and was in lieu of taxes levied directly on the property. Held valid. In *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, legacies less than a certain amount were held legally exempt from taxation.

To these cases may be added others. They illustrate the power of the legislature of the State over the subjects of taxation and the range of discrimination which may be exercised in classifying those subjects when not obviously exercised in a spirit of prejudice and favoritism. *Cook* v. *Marshall County,* 196 U. S. 261, 274; *Missouri* v. *Dockery,* 191 U. S. 165. The cases decided subsequent to the decision in *Bell's Gap Railroad Co.* v. *Pennsylvania,* have applied its principle to many varying instances. Granting the power of classification, we must grant Government the right to select the differences upon which the classification shall be based, and they need not be great or conspicuous. *Keeney* v. *New York,* 222 U. S. 525, 536. The State is not bound by any rigid equality. This is the rule;—its limitation is that it must not be exercised in "clear and hostile discriminations between particular persons and classes." See 223 U. S. 59, 62, 63. Thus defined and thus limited, it is a vital principle, giving to the Government freedom to meet its exigencies, not binding its action by rigid formulas but apportioning its burdens and permitting it to make those "discriminations which the best interests of society require."

We think the statute under review is within the rule.

It is not arbitrary. It has a reasonable basis, resting on a real distinction. It is not a distinction based on mere size only, as contended by appellant, nor upon the mere amount of business done. There is a difference in the doing of the business and its results; a difference in the relation to the public. Indeed, the non-taxed companies, are subsidiary to the taxed companies, patrons, in a sense, of the taxed companies. The use of the untaxed property, as pointed out by the District Court, is "predominantly private, while the use of the taxed property is correspondingly public; the exempt property is used for the personal convenience of the owners, while the taxed property represents commercial investment for profit making purposes." To these differences the court added others: "(1) That the property exempted is only a trifling portion of the whole; (2) that the cost of assessing and collecting in this class would be disproportionate to the amount which would be realized; (3) that this property is in the incipient or development stage, while the taxed property is in the fully developed form." All were differences which could appeal to the legislature and determine a difference of treatment. To accomplish it they had to be united in a class, and, as happily said by Judge Denison in the Circuit Court, the companies were described "in terms of earnings instead of in terms of method and use." It seems, however, that by the selection of earnings as a basis of classification all of the differences we have enumerated are not exactly accommodated. Some small portion of the coöperative companies will be taxed and some small portion of the profit-making companies will be exempt. This result is not, we think, an impeachment of the basis of classification, as the cases we have cited illustrate. Besides, the appellant is not affected by the inexactitude.

The second question in the case is whether the purpose of act No. 49, of 1909, under which the appellant was

assessed, is sufficiently expressed in its title. Prior to the passage of that act certain specified classes of corporations, such as railroad, express companies, etc., were taxed under the provisions of act No. 282 of the acts of 1905, *supra.*'

The title of act No. 49 and § 1 are as follows:

"An act .to amend the title and certain sections of Act No. 173 of 1901. relating to the taxation of railroads and express companies.

"Section 1. The title and sections 1, 4, 5,. 6, 8, 9, 10, 13, 14, 18 and 21 of Act No. 282 of the Public Acts of 1905, entitled 'An Act to provide for the assessment of the property of railroad companies, union station and depot companies, sleeping car companies, express companies, car loaning companies, stock car companies, refrigerator car companies, and fast freight line companies, and for the levy of taxes thereon by a State Board of Assessors, and for the collection of such taxes, and to repeal all. acts or parts of acts contravening any of the provisions of this act,' are hereby amended to read as follows:

"'Title. An act to provide for the assessment of the property, by whomsoever owned, operated or conducted, of railroad companies, union station and depot companies, telegraph companies, telephone companies, sleeping car companies, express companies, car loaning companies, stock car companies, refrigerator car companies, and fast freight companies, and all other companies owning, leasing, running or operating any freight, stock, refrigerator, or any other cars, not being exclusively the property of any railroad company paying taxes upon its rolling stock under the provisions of this Act, over or upon the line or lines of any railroad or railroads in this State, and for the levy of taxes thereon by a State Board of Assessors, and for the collection of such taxes, and to repeal all acts or parts of acts contravening any of the provisions of this act.'"

The contention is that there is nothing in the title to indicate the intention of adding to the act of 1905 "new classes of business to those already taxed by the *ad valorem* method, so as to include telephone companies." It is hence further contended that the act is invalid, the constitution of the State providing that "no law shall embrace more than one object, which shall be expressed in its title."

There can be no doubt that the purpose of the act was to extend to telegraph and telephone companies the provisions of the act of 1905, which provided for the assessment of the property of certain companies and the levying of taxes thereon by the State Board of Assessors, and the method of collecting such taxes. Its title explicitly states that the purpose is to amend the title and the *act* relating to the taxation of railroad and express companies and the particular sections which consummate the purpose are referred to and declared in § 1 to be amended. The title, therefore, is a substantial compliance with the constitution of the State, and the brief of appellee shows thirty-eight examples of like kind in the laws of the State. This legislative and executive construction is entitled to weight, and, when considered in connection with the consequence of making those laws invalid as well as declaring the law under review invalid, would determine against the construction urged by appellant even if we had doubt of the sufficiency of the title to give notice of the purpose of the legislation. See *Attorney General* v. *Amos,* 60 Michigan, 372; *Grimm* v. *Secretary of State,* 137 Michigan, 134; *Common Council of Detroit* v. *Schmid,* 128 Michigan, 379; *People* v. *Howard,* 73 Michigan, 10; *City of Detroit* v. *Chapin,* 108 Michigan, 136.

*Decree affirmed.*