THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. ISAAC G. WOLF, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. " GEORGE " JENNINGS, Respondent.

Second Department, March 18, 1927.

Municipal corporations — ordinances — crimes — village ordinance prohibited erection and maintenance of any advertisement in form of bill or sign except for sale or for rent sign under certain restrictions as to size and location — defendants erected real estate sale sign in violation of ordinance — sign was painted on metal erected on wooden frame — Village Law, § 90, subd. 26, gives village power to enact ordinance " to regulate or prohibit the posting of bills "— sign was " posting of bills " — ordinance related to public health, public safety, public morals or public welfare — so far as defendants are concerned ordinance is valid — court will not consider whether it may be invalid as to others.

The defendants were convicted of a violation of an ordinance of the village of Kings Point, Nassau county, which prohibits the erection or maintenance of any advertisement in the form of a bill or sign or other device or display within the village, except signs placed upon real property advertising its sale or rental. The violation consisted of the erection upon real property of a for sale sign which was of a larger size than that authorized by the ordinance.

The sign in question, which consisted of metal erected on a wooden frame on which the sign was painted, constituted the " posting of bills " within the meaning of subdivision 26 of section 90 of the Village Law, which authorizes the board of trustees to enact ordinances " To regulate or prohibit the posting of bills."

The ordinance was in the interest of public health, public safety, public morals or the general welfare, and even though certain æsthetic considerations may have moved the board of trustees in the enactment of the ordinance, it was, nevertheless, valid.

The ordinance is valid so far as the defendants are concerned and whether or not it may be invalid as to others in that it absolutely prohibits the erection or maintenance of any advertisement in the form of a bill or sign, with the exception of that relating to real property, cannot be raised by the defendants in this case.

APPEAL in each of the above-entitled actions by the plaintiff, The People of the State of New York, from an order and judgment of the County Court of the county of Nassau, entered in the office

of the clerk of said county on the 14th day of June, 1926, reversing a judgment of the Police Court of the village of Kings Point, Nassau county, rendered on the 7th day of December, 1925, convicting the defendant in each action of a violation of Ordinance No. 5 of said village, and remitting a fine of fifty dollars imposed upon each defendant.

*Richard H. Brown, Assistant District Attorney,* and *Bronson Winthrop* [*Elvin N. Edwards, District Attorney,* and *Allen T. Klots* with them on the brief], for the appellant.

*Erastus J. Parsons,* for the respondents.

KAPPER, J. The incorporated village of Kings Point, situated on the Great Neck peninsula of the north shore of Long Island, consists of about 300 families and has an area of about three square miles. All of the buildings within the village limits are private residences of high grade construction. They are built upon large plots of ground, the smallest of the plots consisting of about half an acre. About one-half the village area consists of vacant property. By duly adopted zoning ordinances, the village has forbidden the erection of business structures or the carrying on of business within the village limits. With those ordinances we are not concerned save in so far as they indicate the nature and character of the community. There are no stores or business places in the village with the single exception of a little shop where candy and soda are sold during the summer months. There are no banks, public schools or apartment houses in the village. The community may be characterized as seclusive and exclusive. The ordinance with which we are concerned was adopted on April 20, 1925, and reads as follows:

" An Ordinance in Relation to the Posting of Bills.

" *The Trustees of the Village of Kings Point do hereby enact as follows:*

" Section 1. It shall be unlawful for any person to post, erect or maintain any advertisement in the form of a bill or sign or other device or display within the Village of Kings Point and for any owner of real property in the Village of Kings Point to permit the posting, erection or maintenance on his property of any advertisement in such form; except that signs solely advertising real property · to be for sale or for rent may be placed on the real property so advertised, not nearer than twenty-five feet to a public street or highway or, in the case of developed property, not nearer to such street or highway than the building line thereof, provided that no such sign shall be so placed as to obstruct the clear view of the

highway from any direction, and further provided that no such sign shall be of greater dimensions than four feet by four feet.

" Section 2. Any person violating the provisions of this Ordinance, or any part thereof, shall be liable for and forfeit and pay a penalty not exceeding Fifty dollars for each offence.

" Any violation of this Ordinance, or any part thereof, shall constitute disorderly conduct, and the person violating the same shall be and is hereby declared a disorderly person."

Subsequent to the adoption of this ordinance, the defendants Wolf and Jennings, being employer and employee respectively, erected upon one of the plots, for the benefit of the owner, a board sign on which was painted or printed the following:

" BROADLAWN
This Magnificent Landscaped
50 ACRE ESTATE
Now being developed with
HIGH CLASS RESIDENTIAL PLOTS
Excellent Roads, Gas, Water,
Telephone, Electricity
Private Beach & Dock Privileges
— Map and Full Particulars —

| Phones | I. G. WOLF | N. Y. Office |
| Great Neck | Sole Agent | 1270 Broadway |
| 921, 922, | 75 Middle Neck Rd. | Tel. Penn. 6944 |
| | Great Neck | |
| 1120 | or your own broker." | |

The structure, for so respondents characterize it, consisted of a wooden frame with sheet metal attached and the wording quoted was painted upon the sheet metal. This sign or billboard was nine feet high by twelve feet wide, the bottom of it being two feet clear of the ground. Its erection was begun at a point fourteen feet back of the highway, but was subsequently moved further back beyond the twenty-five-foot limit, and to that extent, at least, the ordinance was not violated. The violation consists in the fact that the dimensions of this board and sign are approximately three times greater than those prescribed in the ordinance. The defendants were arrested for violating the ordinance upon informations duly laid before a police justice in the village of Kings Point, by whom they were tried, convicted and fined fifty dollars each. They appealed to the County Court of Nassau county, where the judgment of conviction was reversed; and from that judgment of reversal the People appeal.

The opinion of the learned county judge proceeds along the

Second Department, March, 1927.    [Vol. 220

theory that the ordinance subserved no purpose save that of æsthetic considerations; that to be valid it was essential that the ordinance was designed in the interests of public health, public safety, public morals or the general welfare; and that, as none of these purposes was within the purview of the ordinance, the same was illegal and void.    (*People* v. *Wolf*, 127 Misc. 382).

By subdivision 26 of section 90 of the Village Law, the board of trustees of a village is empowered to enact ordinances (amongst other purposes), " To regulate or prohibit the posting of bills." It does not meet the situation fairly to say that this signboard with the language printed or painted thereon, was not the " posting of bills." If the village had the power to regulate or prohibit the posting of bills, this included the printing or painting of lettering on a signboard which effected the same purpose as would the affixing of a paper announcement or advertisement to and against the face of the signboard.    That such a legislative authority is not to be evaded by a narrow or sharp interpretation so as to accomplish the same evil sought to be remedied by painting lettering on the board instead of posting or affixing paper thereto, seems to me to find support in *Gunning System* v. *City of Buffalo* (75 App. Div. 31), where it was held that under a charter provision empowering the city of Buffalo to enact such ordinances " as should be deemed expedient for the good government of the city and the preservation of peace and good order," the city was authorized to enact an ordinance prohibiting the erection of billboards more than seven feet in height without the permission of the common council, and directing that any billboard erected contrary to its provisions shall be abated as a common nuisance.

Very extensive and comprehensive arguments relating to the doctrine of police power and its limitations are presented by the learned counsel on both sides of this appeal.    It would be an act of supererogation to set forth the many and diversified rulings of the courts relating to this vexed subject, perplexing chiefly because of the effort expended from time to time to apply the doctrine to varying and new factors.    We have recently had two very profound and learned decisions upholding zoning ordinances (*Village of Euclid, Ohio,* v. *Ambler Realty Co.,* 272 U. S. 365; *Matter of Wulfsohn* v. *Burden,* 241 N. Y. 288), far more drastic in the aspect of a taking of property than is presented in the facts of this case, if what was done here by the village ordinance really constituted a " taking " of property.

In passing, it may not be inappropriate to quote from Chief Judge HISCOCK's opinion in the *Wulfsohn Case* (*supra,* 299), viz.: " Acting  in accordance with these general  principles courts on the

whole have been consistently and sensibly progressive in adjusting the use of land in thickly populated districts to the necessities and conditions created by congested and complex conditions by upholding as a constitutional exercise of the police power zoning ordinances passed under State authority to regulate the use of land in urban districts. What was once a matter of voluntary submission to restrictive covenants in grants has become a matter of compulsory obedience to ordinances having the force of statutes. It has come about that 40 States have passed laws authorizing zoning ordinances which in one form and another had, in January, 1925, been adopted by 320 municipalities. Commencing, generally speaking, where restrictive covenants commonly stopped, with the exclusion from residential districts of factories and business buildings, these regulations have developed until as in the present case they create residential districts in a large sense limited to private dwellings as distinguished from hotels and apartment houses. Thus far they have been sustained as being conducive to public health, safety and morals. With few exceptions courts have not been ready to say that they might be sustained merely because they preserved the æsthetic appearance of a private residential district and prevented it from being blotched by the erection of some incongruous structure whereby the value of all neighboring property was impaired. The Supreme Court of the United States has, however, gone so far as to approve in substance the views of the Massachusetts Supreme Court that æsthetic considerations might be considered as auxiliary of what thus far have been regarded by the courts as more effective and sufficient reasons. (*Welch* v. *Swasey*, 193 Mass. 364; *Welch* v. *Swasey*, 214 U. S. 91, 108.) "

Ordinances regulating or prohibiting the erection of billboards, the sole use of which was for advertising purposes, have been the subject of judicial consideration. In *People ex rel. Publicity Leasing Co.* v. *Ludwig* (218 N. Y. 540) the ordinance limited the height of signs on roofs which the court construed to be directed against possible insecurity and as guarding the public safety and in that sense subserving " the general welfare." In *Cusack Co.* v. *City of Chicago* (242 U. S. 526) it was held that a city may prohibit the erection of billboards in residence districts in the interests of the safety, morality, health and decency of the community; and that such ordinance prohibiting billboards is not invalidated by a provision which removes the prohibition as to any billboard the erection of which is first consented to by the owners of a majority of the frontage on both sides of the street in the block in which it is to be erected. In *St. Louis Poster Adv. Co.* v. *St.*

*Louis* (249 U. S. 269) a city ordinance prohibited billboards of twenty-five square feet or more, none of which were to extend more than fourteen feet above the ground and required an open space of four feet between the lower edge and the ground, and also forbade their erection at a certain distance from existing buildings or the street. This ordinance was held to be a valid exercise of the police power by the municipality. We have this significant language in the opinion of Mr. Justice Holmes (p. 274): " Of course, the several restrictions that have been mentioned are said to be unreasonable and unconstitutional limitations of the liberty of the individual and of rights of property in land. But the argument comes too late. This court has recognized the correctness of the decision in *St. Louis Gunning Advertising Co.* v. *St. Louis,* 235 Missouri, 99, followed in this case, that billboards properly may be put in a class by themselves and prohibited ' in residence districts of a city in the interest of the safety, morality, health and decency of the community.' *Cusack Co.* v. *Chicago,* 242 U. S. 526, 529, 530. It is true that according to the bill the plaintiff has done away with dangers from fire and wind, but apart from the question whether those dangers do not remain sufficient to justify the general rule, they are or may be the least of the objections adverted to in the cases. 235 Missouri, 99. *Kansas City Gunning Advertising Co.* v. *Kansas City,* 240 Missouri, 659, 671. Possibly one or two details, especially the requirement of conformity to the building line, have æsthetic considerations in view more obviously than anything else. But as the main burdens imposed stand on other ground, we should not be prepared to deny the validity of relatively trifling requirements that did not look solely to the satisfaction of rudimentary wants that alone we generally recognize as necessary. *Hubbard* v. *Taunton,* 140 Massachusetts, 467, 468. If the city desired to discourage billboards by a high tax we know of nothing to hinder, even apart from the right to prohibit them altogether asserted in the *Cusack Co. Case. Citizens' Telephone Co.* v. *Fuller,* 229 U. S. 322, 329."

It is said that these sign cases have all shown that the ordinance had a substantial relation to the public health, safety, morals or general welfare, and that the ordinance in question here does not reach that dignity. I think otherwise. There was considerable evidence adduced upon the trial tending to show the effect of what followed in the wake of the erection generally of billboards and so-called poster signs, such as the land behind them being depositories for trash, litter and debris of every character and description, that leaves of trees and other inflammable material would accumulate and that these things would be a possible source

of fire and a menace to health, and other concomitants all sufficient to amount to practically a public nuisance. In the *Cusack Company Case (supra)* there was evidence showing that fires had been started in the accumulation of combustible material which had gathered about such billboards; that offensive and unsanitary accumulations were habitually found about them; and that they afforded a convenient concealment and shield for immoral practices and for loiterers and criminals (p. 529).

Even without such evidence, must we close our eyes to the obvious? If the respondents are correct in the position which they take, then this village is powerless to either regulate or prohibit billboards. The result of that is, of course, no ordinance, no restriction whatever. What does such a situation come to? Signs of inordinate height may be erected from the ground up and on the street line and for an indefinite linear space. Must the municipality appoint supervisors to inspect the safety of such structures and thus tax residents in no manner benefited so that an owner of property may lease the land to sign or billboard advertisers? Are the nuisances which are created behind such billboards to go on, increase and become permanent to the menace of the health of the community, as well as its morals? These things are universally known and should be accepted in law as facts. If these views are correct, then how can it be said that this ordinance does not aim at subserving or have " substantial relation to the public health, safety, morals, or to the general welfare " (*Cusack Case, supra,* 531)? As long ago as 1900 when many things now not alone unethical but criminal were both ethical and lawful, we had a pronouncement from our Court of Appeals upon this matter of unbridled license in the erection of billboards, which seems to me to have been prophetic (*City of Rochester* v. *West,* 164 N. Y. 510), in which case the city of Rochester adopted an ordinance forbidding the erection within the limits of the city of billboards more than six feet in height. The charter authorized the city to " regulate bill posters and bill distributors and sign advertising." Judge MARTIN, writing for the court, said that the statute conferring upon the common council of the city this power, authorized the city regulation " so far, at least, as such regulation was necessary to the safety or welfare of the inhabitants of the city, or persons passing along its streets," and that such was " precisely what the ordinance in question was intended to accomplish." Then the learned judge added (p. 513): " Nor do we think that the appellant's claim that this statute was unauthorized can be sustained. It is obvious that its purpose was to allow the common council to provide for the welfare and

safety of the community in the municipality to which it applied. If the defendant's authority to erect billboards was wholly unlimited as to height and dimensions, they might readily become a constant and continuing danger to the lives and persons of those who should pass along the street in proximity to them. That the Legislature had power to pass a statute authorizing the city to adopt an ordinance which, if enforced, would obviate that danger, we have no doubt. Nor was it in conflict with any provision of the State or Federal Constitution. The fact that no injury has occurred by reason of the erection of the billboard in question, or that it is improbable that any such injury will occur therefrom, is not controlling upon the question under consideration. The validity of a statute is not to be determined by what has been done in any particular instance, but by what may be done under it. (*Stuart* v. *Palmer*, 74 N. Y. 183; *Gilman* v. *Tucker*, 128 N. Y. 190, 200.) It is equally true that the validity of a statute or ordinance is not to be determined from its effect in a particular case, but upon its general purpose and its efficiency to effect that end. When a statute is obviously intended to provide for the safety of a community, and an ordinance under it is reasonable and in compliance with its purpose, both the statute and the ordinance are lawful, and must be sustained."

It is not necessary to refer to changed times or conditions or of higher ethical standards any further than such reference has already been made. But, it may be justly pronounced that if what was said in the case last cited was sound in 1900, no attempted reason should be assigned at this late day for a recession from the doctrine there promulgated. Applying that language to the case at bar, we consider what may be done without a restrictive or regulatory ordinance by those whose sole thought is personal profit without the slightest regard for the well-being of the community. I find it too difficult to attempt to define the " public welfare " as having no substantial relation to the possibilities to which this ordinance is sought to be directed. But " public welfare " alone is not the sole consideration, for there seems to me as plainly involved the questions of public health, public safety and public morals. The ordinance in question " is not taking private property for a public use, but must be construed as a salutary restraint on a noxious use by the owner, and within the police power of a city or municipality whose charter brings such ordinance within its legislative authority." (*Whitmier & Filbrick Co.* v. *City of Buffalo*, 118 Fed. 773, 776.)

It is urged, as it was successfully urged below, that this ordinance prohibiting all advertising other than that of the sale or rental of

real estate, would permit of a construction inhibiting a physician from putting his card in his window and forbid a notary public from doing likewise. It is a sufficient answer to say that that question is not here. We are facing here a question of whether or not this ordinance was reasonable in so far as concerned the defendants' transgression of it. It is not pretended that the size of the sign fixed by the ordinance, and placed where and in the manner in which the ordinance permitted it to be placed, was unreasonable and insufficient to announce the wish of the owner to sell his property. Nothing else being involved excepting the sign herein complained of, I think we may well adopt the language of the Supreme Court of the United States in *Jeffrey Mfg. Co.* v. *Blagg* (235 U. S. 571, 576), that " it is the well-settled rule of this court that it only hears objections to the constitutionality of laws from those who are themselves affected by its alleged unconstitutionality *in the feature complained of.*" (Italics mine.)

I reach the conclusion that the ordinance was valid as to the acts of these defendants, and, therefore, the orders and judgments of the County Court of Nassau county should be reversed upon the law, and the judgments of the Police Court of the village of Kings Point should be affirmed.

KELLY, P. J., and MANNING, J., concur; YOUNG, J., concurs in result, in a separate memorandum; LAZANSKY, J., concurs with YOUNG, J.

YOUNG, J. (concurring). In my opinion this ordinance is discriminatory, unreasonable and void. It prohibits *all* signs, structures or billboards except signs solely advertising real property. It forbids a physician from placing the customary " M. D." on a plate on his door and a notary public from similar advertisement. It seems to be the rule, however, that the court will hear objections to the constitutionality of a law only from those who are themselves affected by its unconstitutionality. (*Jeffrey Mfg. Co.* v. *Blagg*, 235 U. S. 571, 576.) The provisions of the ordinance applicable to these defendants appear to be reasonable enough and, for this reason, under the authority cited, I feel constrained to concur.

LAZANSKY, J., concurs.

In each case: Order and judgment of the County Court of Nassau county, reversing judgment of conviction, reversed upon the law, and judgment of conviction of Police Court of the village of Kings Point affirmed.