518

PRUDENTIAL TOBACCO COMPANY, INC., BY O. H. CHALKLEY AND W. H. HATCHER, SURVIVING DIRECTORS ACTING AS TRUSTEES IN LIQUIDATION, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 97348. Promulgated August 13, 1940.

*Harry J. Zigun, Esq.*, for the petitioners.
*L. A. Spalding, Jr., Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency in income tax in the amount of $7,136.05 and a deficiency in excess profits tax in the amount of $1,679.15 for the taxable period January 1, 1936, to and including March 31, 1936. The issue for decision is whether or not provisions of the Revenue Act of 1936 are applicable to the period here involved. The Board adopts the stipulation of the parties as its findings of fact.

The petitioner filed its income tax returns for all periods up to December 31, 1935, upon the basis of a calendar year. It made application on December 20, 1935, for permission to change to a fiscal period beginning April 1 of one year and ending on March 31 of the following year so that it would be on the same basis as its parent, Philip Morris & Co., Ltd. The Commissioner, on January 17, 1936, granted permission for the change, effective March 31, 1936, provided the taxpayer would make proper adjustments on its books and would file a return on or before June 15, 1936, for the period from January 1, 1936, through March 31, 1936. The petitioner corporation was dissolved on June 2, 1936. The petitioner on June 15, 1936, filed its return for the period January 1 through March 31, 1936, and paid an amount equal to one-fourth of the income and excess profits taxes computed under the Revenue Act of 1934 upon the income shown on that return. The Revenue Act of 1936 was approved and became a law on June 22, 1936.

The petitioner contends that the Revenue Act of 1934 and not the Revenue Act of 1936 is applicable to the taxable period January 1 through March 31, 1936. The words "taxable year" are defined in section 48 of the Revenue Act of 1936 to include "in the case of a return made for a fractional part of a year under the

provisions of this title or under regulations prescribed by the Commissioner with the approval of the Secretary, the period for which such return is made." The petitioner does not contend that the return for the period of three months was not made in accordance with the law and regulations. The short period was a taxable year. *Pennsylvania Electric Steel Casting Co.*, 20 B. T. A. 602; *Corno Mills Co.*, 21 B. T. A. 712; *Sunburst Refining Co.*, 23 B. T. A. 824; *Pennsylvania Chocolate Co.* v. *Lewellyn*, 27 Fed. (2d) 762. Section 1 of the Revenue Act of 1936 makes it clear that the provisions of the act are to apply to all taxable years beginning after December 31, 1935, but are not to apply to any taxable year beginning prior to January 1, 1936. Section 63 of the same act provides that the taxes imposed are in lieu of taxes imposed under the Revenue Act of 1934. Since the taxable period here in question was a taxable year beginning after December 31, 1935, the Revenue Act of 1936 and not the Revenue Act of 1934 applies.

Section 14 of the Revenue Act of 1936 imposes what is there called "Surtaxes on Undistributed Profits." Those taxes "upon the net income of every corporation" differ from prior taxes on income in some respects. They are measured by the sum of various percentages of "the undistributed net income." The undistributed net income is defined as the adjusted net income minus two credits, one of which is the dividends paid credit. The dividends paid credit is defined generally as "the amount of dividends paid during the taxable year." Sec. 27. Adjusted net income is defined as the net income minus the sum of certain items not here material. The petitioner argues that the real purpose of the wholly new statutory provisions relating to the surtaxes on undistributed profits was to cause corporations to distribute their net earnings, so that they would be received by and taxed to the stockholders, and to penalize, by the high tax, those corporations which, having had the opportunity, refused or failed to relieve themselves from the penalty by exercising their privilege of distributing dividends. The petitioner then points out that this revenue act was not adopted until several months after the close of the taxable period involved herein and the petitioner never had any opportunity to act within that year with knowledge of the statutory provisions now said to be applicable thereto. It did not know in time and had no way of knowing that the distribution of dividends within the period would relieve it from the surtaxes. It argues that the application of the surtax provisions to this short period would subject this one taxpayer to the burden of a penal provision without giving it the same privilege of obtaining relief through the dividends paid credit afforded all other corporations, would be a retroactive application of an act penal in character without *locus poenitentia,*

would be arbitrary and discriminatory, and for those reasons would be unconstitutional.

The lengthy Committee Reports on the undistributed profits tax provisions collected in Seidman's Legislative History of Federal Income Tax Laws, beginning at page 207, do not fully support the statements of the petitioner as to the nature and purpose of the provisions. They indicate that the purpose of Congress was not to penalize accumulations but to equalize tax by collecting in this wise an amount which would otherwise be collected as surtaxes from shareholders. It was pointed out that partners were taxed upon their respective shares of partnership income (clearly not a penal provision) regardless of distribution, and the undistributed profits tax would tend to produce a corresponding revenue from corporate earnings otherwise free from surtax. The President's message was to the same effect. We are unable to say that section 14 is penal in character (cf. *United Business Corporation of America* v. *Commissioner*, 62 Fed. (2d) 754) or that it is a wholly new tax, as for example, was the gift tax. Cf. *Blodgett* v. *Holden*, 275 U. S. 142, modified on rehearing, 276 U. S. 594. See also *Brady* v. *Anderson*, 240 Fed. 665; certiorari denied, 244 U. S. 654. The cases cited by the petitioner to support its claims that this tax is penal are not in point, because they deal with wholly different statutory provisions. An increase in rate is not a new tax and may be retroactively applied without violating the Constitution. *Milliken* v. *United States*, 283 U. S. 15; *Welch* v. *Henry*, 305 U. S. 134.

The latter case is particularly interesting here. The Wisconsin taxing act in force in 1933 imposed a tax on net income at graduated rates. It allowed a deduction for dividends received. Welch filed his return for 1933 on March 15, 1934, showing no taxable income after deducting dividends. The legislature, a year later, decided to tax the dividends and enacted a law imposing a tax on dividends received in 1933 and theretofore deductible. The rates were higher than those in effect in 1933. The Supreme Court discussed the retroactive application of taxing acts, held that the one in question was constitutional, and said: "In each case it is necessary to consider the nature of the tax and the circumstances in which it is laid before it can be said that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation." That case and *United States* v. *Hudson*, 299 U. S. 498, indicate that taxpayers must be deemed to be forewarned of the possibility of changes in rates, classifications, deductions, and credits in the income tax laws. See possibly contra *Untermeyer* v. *Anderson*, 276 U. S. 440. It might be well to mention at this point the circumstances of this case. The petitioner voluntarily interjected the short period. Had it remained upon a calendar year basis all of the provisions of the Revenue Act

of 1936 would have applied to its 1936 income. The filing of a return, on or before June 15, 1936, for the short period, was one of the conditions upon which permission for the change was granted. Failure to file the return would have left the petitioner upon the calendar year basis. Perhaps an answer to the petitioner is that it must take the disadvantages of the short period along with the advantages which it sought.

The Supreme Court, in discussing proper tax classifications under the Fourteenth Amendment, has said: "The state is not bound by any rigid equality. This is the rule; its limitation is that it must not be exercised in 'clear and hostile discriminations between particular persons and classes.'" *Citizens Telephone Co.* v. *Fuller*, 229 U. S. 322. It also said that the classification "must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Louisville Gas & Electric Co.* v. *Coleman*, 277 U. S. 32. A taxing statute "may not be so arbitrary as to amount to confiscation * * *." *Nichols* v. *Coolidge*, 274 U. S. 531. Here the constitutional question is raised under the Fifth Amendment, but if the above rules have any application, they do not show this provision unconstitutional. It does not discriminate between taxpayers similarly circumstanced. Cf. *Brushaber* v. *Union Pacific Railroad Co.*, 240 U. S. 1; *Heinman* v. *United States*, 52 Fed. (2d) 1035; *Foley Securities Corporation* v. *Commissioner*, 106 Fed. (2d) 731. While we are not entirely free from doubt upon the present question, nevertheless, we are unwilling to declare it unconstitutional upon the present record.

*Decision will be entered for the respondent.*