## QUAKER CITY CAB COMPANY *v.* COMMONWEALTH OF PENNSYLVANIA.

No. 139. Argued April 20, 1928.—Decided May 28, 1928.

*Mr. Owen J. Roberts,* with whom *Mr. Douglass D. Storey* was on the brief, for plaintiff in error.

In such a case as this, valid tax classification cannot rest solely upon the character of the operator (that is, whether it be corporate or non-corporate), when there is no other difference in the situation or the circumstances of the operators. The tax is not of a kind peculiar to corporations. It is unlike a capital stock tax, which of necessity can apply only to artificial taxpayers, or an excise tax. Even in Pennsylvania this distinction is important. *Schoyer* v. *Comet Oil Co.*, 284 Pa. 189.

In *Fort Smith Lumber Co.* v. *Arkansas,* 251 U. S. 532, the tax was a capital stock tax, which obviously can be levied only upon corporations and other associations having the characteristics of corporations. If the principle should be extended, then there is no reason why corporations cannot be classified for the purpose of paying any tax. Real estate and personal property taxes could be levied on real estate and personal property only when owned by corporations. In fact, all taxes could be levied only upon corporate beings.

The tax is not an excise, a privilege, or a license tax. *Commonwealth* v. *Harrisburg Light & Power Co.,* 284 Pa. 175. This Court itself definitely held that this tax was not a privilege tax. *Phila. & Southern Mail S. S. Co.* v. *Commonwealth,* 122 U. S. 326.

The present statute which repealed the acts involved in that case, made no change in the nature of the tax, but only followed the rule there announced and limited the tax to the ". gross receipts . . . received from passengers and freight traffic transported wholly within this State."

In dealing with excise, license, and privilege taxes, the latitude is very broad, and purely artificial selections have been sustained which are not sanctioned with respect to other taxes. In *Flint* v. *Stone Tracy Co.,* 220 U. S. 107, the Court made it clear that the tax was sustained not because it was imposed on the business (which it ad-

mitted was the same "whether conducted by individuals or corporations") but because it was imposed only on the privilege of conducting the business in corporate form. Other leading cases like the one last cited are: *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S 283; *Spreckels Sugar Refining Co.* v. *McClain,* 192 U. S. 397; *Ohio Tax Cases,* 232 U. S. 576; *Cheney Bros. & Co.* v. *Massachusetts,* 246 U. S. 147; *Southern Ry. Co.* v. *Watts,* 260 U. S. 519; *Roberts & Schaeffer Co.* v. *Emmerson,* 271 U. S. 50.

But broad as seems to be the power of selection in the imposition of such taxes, there is a limit. In *Southern Ry. Co.* v. *Greene,* 216 U. S. 400, an additional franchise tax on foreign corporations for the privilege of doing business was held invalid. See *Bethlehem Motors Corp'n* v. *Flynt,* 256 U. S. 421, which completely answers the contention that plaintiff in error can avoid taxation by surrendering its charter and operating as a general partnership. This it cannot do, with its outstanding obligations, any more easily that the foreign corporations could comply with the arbitrary terms of the North Carolina statute, with which that case dealt. See *Air Way Electric Appliance Corp'n* v. *Day,* 266 U. S. 71.

The classification being based solely upon whether the taxicab operator is an artificial being, it is arbitrary and illegally discriminatory. The discrimination is real. The corporate taxicab operator pays every tax which the noncorporate taxicab operator pays. In addition, the corporate (domestic and foreign) operator pays a capital stock tax of 5 mills upon the actual value of its capital stock and a bonus of 1/3 of 1% on the par value of all issued stock, if it be a domestic corporation, or 1/3 of 1% on the amount of capital actually employed in Pennsylvania, if it be a foreign corporation.

The case at bar, therefore, is totally unlike *General American Tank Car Corp'n* v. *Day,* 270 U. S. 367, where

the special tax of 25 mills on the dollar of the assessed value of the rolling stock of foreign corporations was in lieu of all other state taxes which averaged approximately 25 mills.

In dealing with taxes other than (1) taxes peculiar to corporations and (2) excise, license, or privilege taxes, this Court has consistently taken the stand that, while the Fourteenth Amendment does not impose upon the legislature an iron rule of equal taxation, it does impose the rational constitutional rule that so-called classifications cannot be made solely with reference to the character of the taxpayer; that is, whether it is a natural or an artificial person. *California R. R. Tax Cases,* 13 Fed. 722, (dismissed by compromise, *County of San Mateo* v. *Southern Pacific R. R. Co.,* 116 U. S. 138); *County of Santa Clara* v. *Southern Pacific R. R. Co.,* 18 Fed. 385, (affirmed on another ground, *Santa Clara County* v. *Southern Pacific R. R. Co.,* 118 U. S. 394, but see concurring opinion, and Guthrie, Fourteenth Amendment, p. 121); *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283; *Quong Wing* v. *Kirkendall,* 223 U. S. 59; *Pullman Co.* v. *Knott,* 235 U. S. 23; *Chalker* v. *Birmingham & Northwestern Ry. Co.,* 249 U. S. 522; *Royster Guano Co.* v. *Virginia,* 253 U. S. 412; *Schlesinger* v. *Wisconsin,* 270 U. S. 230; *Hanover Fire Ins. Co.* v. *Harding,* 272 U. S. 494.

The rule that the legislature may exempt from the general class a particular group which operates for a distinctly different purpose, as in *Citizens Telephone Co.* v. *Fuller,* 229 U. S. 322, is only application of the same general principle which permits the legislature, if it chooses, to " exempt certain classes of property from any taxation at all, such as churches, libraries, and the property of charitable institutions." *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232.

The same rule was applied in *Northwestern Mut. Life Ins. Co.* v. *Wisconsin,* 247 U. S. 132, where an annual

license tax on level premium life insurance companies was sustained although fraternal and beneficial societies having lodges and insuring only the lives of members were exempt.

The decisions of state courts condemn a classification based solely upon whether the taxpayer is a corporation or a natural person. *Russell v. Croy*, 164 Mo. 69; *Southwestern Bell Telephone Co. v. Middlekamp*, 1 F. (2d) 563; *Gamble-Robinson Fruit Co. v. Thoresen*, 53 N. D. 28.

The several state constitutions contain provisions relative to uniformity of taxation. While they are expressed in different language, the basic idea is to protect taxpayers from unfair and arbitrary classifications and discriminations. The following cases, we believe, establish the rule that the classification made in the case at bar is wholly arbitrary and illusory. *Pullman Palace Car Co. v. Texas,* 64 Tex. 274; *Parker v. North British & M. Ins. Co.*, 42 La. Ann. 428; *Adams v. Yazoo & Mississippi Valley R. R. Co.*, 77 Miss. 194; *State v. Stonewall Ins. Co.*, 89 Ala. 335; *U. S. Express Co. v. Ellyson*, 28 Ia. 370; *Std. Life & Accident Ins. Co. v. Detroit*, 95 Mich. 466; *Danville v. Quaker Maid*, 211 Ky. 677.

The discrimination in this statute is clear and hostile against the corporate taxicab operators and is of an unusual character unknown to the practice in Pennsylvania. *Bell's Gap R. R. Co. v. Pennsylvania*, 134 U. S. 232. *Heisler v. Thomas Colliery Co.*, 260 U. S. 245, distinguished.

*Mr. John Robert Jones,* with whom *Mr. Thomas J. Baldridge* was on the brief, for defendant in error.

The construction put by the court below upon the statutes and constitution of its own State is not open to review in this Court. The Pennsylvania court held the plaintiff in error to be a transportation corporation, operating a device for the transportation of passengers

and their luggage upon the public highways and therefore within the terms of the section and subject to the tax. The transportation of passengers or freight, or both, is the business which the companies named are empowered by law to transact, which, in the case of the plaintiff in error, is the business authorized by its charter, and which the State permitted it, as a foreign corporation, to perform within its borders, and for which the Public Service Commission granted it a certificate of public convenience. The sole business of the plaintiff in error is that of the transportation of passengers and their luggage solely within the State. To the receipts of such business alone was the rate of taxation applied to determine the amount of the tax. Under the act if plaintiff in error had had no receipts from such business, it would not have been liable for the payment of any tax.

"The tax," as was said in *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, "is not payable unless there be a carrying on or doing of business in the designated capacity, and this is made the occasion for the tax, measured by the standard prescribed."

That the tax is not a property tax is clear, not only from the language of § 23 but also by the construction placed upon it by the Supreme Court. This view is strengthened by the fact that a capital stock tax, which is a property tax, is imposed upon such companies under §§ 20 and 21 of the same act (changed by subsequent legislation as to the method of computing and determining the amount). It is a tax upon the business of the companies measured in amount by the gross receipts or income resulting from the conduct and operation of such business. It is a tax upon the doing of a business and in respect to a carrying on thereof, in a sum equivalent to eight mills upon each dollar of the gross receipts received from the transacting or performing of such business. It is not a tax upon the property of the corporation.

The tax is imposed upon both domestic and foreign corporations, and is confined to business done solely within the State. All within the class are treated alike. Hence the issue turns upon the power of the State to classify, and whether or not the classification made by the act rests upon a reasonable basis and is not illusory or arbitrary. Is the particular classification open to objection because it precludes the assumption that it was made in the exercise of legislative judgment and discretion?

The principles governing the application of the Fourteenth Amendment were considered in *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232; *Keeney* v. *New York,* 222 U. S. 525; *St. Louis, etc. R. R.* v. *Arkansas ex rel. Norwood,* 235 U. S. 350; *Maxwell* v. *Bugbee,* 250 U. S. 525; *Swiss Oil Corp'n* v. *Shanks,* 273 U. S. 407.

*Flint* v. *Stone Tracy Co.,* 220 U. S. 107, is conclusive in this case.

The Pennsylvania tax is limited and confined to the precise business for which the companies made subject to the tax were created and were permitted to transact within the borders of the State. Plaintiff in error is required further to secure from the Public Service Commission of the State a certificate of public convenience to use the public highways as prescribed in such certificate and the law authorizing its issue. The tax is not payable by the corporation unless it is carrying on or doing business in the designated capacity of a transportation company, and, as was said by this Court in *Flint* v. *Stone Tracy Co., supra,* " this is made the occasion for the tax, measured by the standard prescribed "; and if there be no receipts from such corporate activity there is no tax. Is this not conclusive in this case?

Having in mind the facts that plaintiff in error is a foreign corporation and is engaged solely in an intrastate business in Pennsylvania, and that it is taxed, as are

domestic corporations, solely with reference to the receipts of such business and in the same manner as domestic corporations, and that the State of Pennsylvania had the power to exclude it from the operation of its business within the State (*Hooper* v. *California*, 155 U. S. 648) and, therefore, the power to prescribe the conditions and limitations of its business operations within the State, and that the present law was an ingredient of the Pennsylvania system of taxation many years prior to the entrance of plaintiff in error to Pennsylvania,—especially pertinent is the language of this Court in *Crescent Oil Co.* v. *Mississippi*, 257 U. S. 129. See also *Horn Silver Mining Co.* v. *New York*, 143 U. S. 305; *Paul* v. *Virginia*, 8 Wall. 168; *New York* v. *Roberts*, 171 U. S. 658; *Brown-Forman Co.* v. *Kentucky*, 217 U. S. 563; *Southwestern Oil Co.* v. *Texas*, 217 U. S. 114; *Pacific Express Co.* v. *Seibert*, 142 U. S. 339; *Metropolitan Street Ry. Co.* v. *New York*, 199 U. S. 1.

The classification is valid, whether the tax be regarded as an excise upon the business of the companies, their activities in the State, or a tax upon the franchise or privilege of doing business in the State, or as a property tax. The construction placed upon the act and the Constitution of the State by the state court is accepted by this Court.

The tax is not imposed upon the gross receipts as property, but only in respect of the carrying on of the business. *Spreckels Sugar Refining Co.* v. *McClain*, 192 U. S. 397. If there be no gross receipts from transportation wholly within the State, there is no tax. There is no tax payable unless there is a carrying on or doing of business in the designated capacity. *Phila. S. S. Co.* v. *Pennsylvania*, 122 U. S. 326, distinguished. *Horn Silver Mining Co.* v. *New York*, 143 U. S. 305; *St. Louis, etc., R. R.* v. *Arkansas*, 235 U. S. 350; *State Tax on Railway Gross Receipts*, 15 Wall. 284.

The principles and policy of the law of taxation in Pennsylvania are fairly outlined in *Commonwealth* v. *Sharon Coal Co.,* 164 Pa. 304; *Commonwealth* v. *Brewing Co.,* 145 Pa. 83; *Seabolt* v. *Commissioners,* 187 Pa. 318; *Commonwealth* v. *Delaware Division Canal Co.,* 123 Pa. 594. It is significant that, while the tax upon the business of certain classes of corporations measured by their gross receipts has been in force in Pennsylvania many years, and several of the statutes imposing it have been before this Court (see *State Tax on Railway Gross Receipts,* 15 Wall. 284; *Phila. S. S. Co.* v. *Pennsylvania,* 122 U. S. 326), it does not appear that any such contention was made as is made in the present case.

Authorities invoked to support an argument that a tax on an incident or function of property is a direct tax upon the property itself simply show that the States cannot, directly or indirectly burden the exercise by Congress of the powers committed to it by the Constitution, nor may Congress burden the agencies or instrumentalities employed by the States in the exercise of their power. Such doctrine does not in any way affect the instant case. Assuming, for the purpose of argument, that the tax imposed is a tax upon property; how stands the case of plaintiff in error? It appears that the authorities cited by it not only do not support its contention, but on the contrary expressly negative it.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Judgment was entered in the Court of Common Pleas of Dauphin County, Pennsylvania, in favor of the Commonwealth for " gross receipts taxes for the six months ending the 31st day of December, 1923," amounting with interest and commission to $6,049.94. The tax is claimed under § 23 of an Act of June 1, 1889, P, L, 420, 431,

The provisions here material are printed in the margin.* The gross receipts taxed were derived by plaintiff in error from the use of its motor vehicles for the transportation within Pennsylvania of persons and their luggage. Plaintiff in error contended that if applied to such receipts the section violates the equal protection clause of the Fourteenth Amendment. The highest court of the State upheld the Act and affirmed the judgment. 287 Pa. 161.

Plaintiff in error is a New Jersey corporation authorized to do business in Pennsylvania as a foreign corporation; and, since June 1, 1917, it has carried on a general taxicab business in Philadelphia. The Supreme Court held that the section taxes gross receipts from the operation of taxicabs. It provides that every transportation company, whether incorporated in Pennsylvania or elsewhere, owning or operating any device for the transportation of passengers, " shall pay to the state treasurer a tax of eight mills upon the dollar upon the gross receipts of said corporation . . . received from passengers . . . transported wholly within this State . . ."

Plaintiff in error was subject to competition in its business by individuals and partnerships operating taxicabs. The Act does not apply to them, and no tax is imposed on their receipts. Corporations operating taxicabs are not exempted from any of the taxes imposed on

* " That every . . . transportation company, . . . now or hereafter incorporated or organized by or under any law of this Commonwealth, or now or hereafter organized or incorporated by any other State or by the United States or any foreign government, and doing business in this Commonwealth, and owning [or] operating . . . any railroad . . . or other device for the transportation of freight or passengers or oil . . . shall pay to the state treasurer a tax of eight mills upon the dollar upon the gross receipts of said corporation . . . received from passengers and freight traffic transported wholly within this State , , ."

natural persons carrying on that business. And every such corporation whether domestic or foreign pays a capital stock tax of five mills on the actual value of its capital stock and a bonus of one-third of one per cent on the par value of all stock issued if it be a domestic corporation, and a like rate on its capital employed in Pennsylvania if it be a foreign corporation. Act of July 22, 1913, P. L. 903. § 1, Act of May 3, 1899, P. L. 189. § 1, Act of May 8, 1901, P. L. 150. The Supreme Court said that it is immaterial whether individuals engaged in a like taxicab business are subject to the tax here involved and that corporations may be placed in a class separate from individuals and so taxed.

The equal protection clause extends to foreign corporations within the jurisdiction of the State and safeguards to them protection of laws applied equally to all in the same situation. Plaintiff in error is entitled in Pennsylvania to the same protection of equal laws that natural persons within its jurisdiction have a right to demand under like circumstances. *Kentucky Finance Corp'n* v. *Paramount Exch.*, 262 U. S. 544, 550. The equal protection clause does not detract from the right of the State justly to exert its taxing power or prevent it from adjusting its legislation to differences in situation or forbid classification in that connection, "but it does require that the classification be not arbitrary but based on a real and substantial difference having a reasonable relation to the subject of the particular legislation." *Power Co.* v. *Saunders*, 274 U. S. 490, 493. It is established that a corporation, by seeking and obtaining permission to do business in a State does not thereby become bound to comply with, or estopped from objecting to, the enforcement of its enactments that conflict with the Constitution of the United States. The right to withhold from a foreign corporation permission to do local business therein does not enable the State to require such a corporation

to surrender the protection of the Federal Constitution. *Power Co.* v. *Saunders, supra,* .497. *Hanover Insurance Co.* v. *Harding,* 272 U. S. 494, 507. *Frost* v. *Railroad Commission,* 271 U. S. 583, 593 *et seq. Fidelity & Deposit Co.* v. *Tafoya,* 270 U. S. 426, 434. *Western Union Tel. Co.* v. *Foster,* 247 U. S. 105, 114. *Looney* v. *Crane Co.,* 245 U. S. 178, 188. *Sioux Remedy Co.* v. *Cope,* 235 U. S. 197, 203.

The section declares the imposition to be a tax " upon gross receipts." And the Supreme Court said: " The real subject of the tax is the gross receipts of a company engaged in the transportation of freight or passengers . . ." That statement is not affected by a later expression referring to the tax as a " state tax on business or income " in contrast with a " local tax on property " such as hacks, cabs and other vehicles. The variation of language used by the court evidently is intended to be, and is, without significance. The words of the section are too plain to require explanation. They could not reasonably be given any other meaning. But, in any event, a characterization of the tax by the state court is not binding here. *Louisville Gas & Electric Co.* v. *Coleman, ante,* p. 32., *St. Louis Compress Co.* v. *Arkansas,* 260 U. S. 346, 348. There is no controversy as to the application of the tax. Plaintiff in error assumes that the section covers its gross receipts, as held by the state court, but insists that the section is invalid because it does not extend to like receipts of natural persons and partnerships. No doubt there are situations in which, as appears in *Cudahy Packing Co.* v. *Minnesota,* 246 U. S. 450, and other cases, a percentage of gross earnings may be taken as a tax on property used in the business and properly may be deemed not to be a tax or burden on such earnings. But the practical operation of the section is to be regarded, and it is to be dealt with according to its effect. *Frick* v. *Pennsylvania,* 268 U. S. 473. *Panhandle Oil Co.* v. *Mississippi,*

*ante,* p. 218. Here the tax is one that can be laid upon receipts belonging to a natural person quite as conveniently as upon those of a corporation. It is not peculiarly applicable to corporations as are taxes on their capital stock or franchises. It is not taken in lieu of any other tax or used as a measure of one intended to fall elsewhere. It is laid upon and is to be considered and tested as a tax on gross receipts; it is specifically that and nothing else.

In effect § 23 divides those operating taxicabs into two classes. The gross receipts of incorporated operators are taxed while those of natural persons and partnerships carrying on the same business are not. The character of the owner is the sole fact on which the distinction and discrimination are made to depend. The tax is imposed merely because the owner is a corporation. The discrimination is not justified by any difference in the source of the receipts or in the situation or character of the property employed. It follows that the section fails to meet the requirement that a classification to be consistent with the equal protection clause must be based on a real and substantial difference having reasonable relation to the subject of the legislation. *Power Co.* v. *Saunders, supra.* No decision of this Court gives support to such a classification.* In no view can it be held to have more than an arbitrary basis. As construed and applied by the state court in this case, the section violates the equal protection clause of the Fourteenth Amendment. See *The Railroad Tax Cases,* 13 Fed. 722. *County of Santa Clara* v. *Southern Pacific R. R. Co.,* 18 Fed. 385. *Northern Pacific R. Co.* v. *Walker,* 47 Fed. 681. The tax cannot be sustained.

*Judgment reversed.*

---

* And the Supreme Court of Pennsylvania has condemned such a classification. *Schoyer* v. *Comet Oil & Refining Co.,* 284 Pa. 189, 196–197.

Mr. Justice Holmes.

I think that the judgment should be affirmed. The principle that I think should govern is the same that I stated in *Louisville Gas & Electric Co.* v. *Coleman, ante,* p. 41. Although this principle was not applied in that case I do not suppose it to have been denied that taxing acts like other rules of law may be determined by differences of degree, and that to some extent States may have a domestic policy that they constitutionally may enforce. *Quong Wing* v. *Kirkendall,* 223 U. S. 59. If usually there is an important difference of degree between the business done by corporations and that done by individuals, I see no reason why the larger businesses may not be taxed and the small ones disregarded, and I think it would be immaterial if here and there exceptions were found to the general rule. *Flint* v. *Stone Tracy Co.,* 220 U. S. 107, 158, *et seq.* *Citizens Telephone Co.* v. *Fuller,* 229 U. S. 322. *Amoskeag Savings Bank* v. *Purdy,* 231 U. S. 373, 393. *Miller* v. *Wilson,* 236 U. S. 373, 384. *Armour & Co.* v. *North Dakota,* 240 U. S. 510, 517. Furthermore if the State desired to discourage this form of activity in corporate form and expressed its desire by a special tax I think that there is nothing in the Fourteenth Amendment to prevent it.

Mr. Justice Brandeis, dissenting.

It has been the consistent policy of Pennsylvania since 1840 to subject businesses conducted by corporations to heavier taxation than like businesses conducted by individuals.[1] It has likewise been the consistent policy of

---

[1] Pennsylvania was the first state to adopt a general corporation tax. P. L. 1839–1840, p. 612. In 1868 the tax was extended to foreign corporations. P. L. 1868, p. 108. The courts of Pennsylvania have regularly upheld the power of the Legislature, under the state

the State since 1864 to subject some kinds of businesses conducted by corporations to heavier taxation than other businesses conducted by corporations.[2] Pursuant to this policy, the legislature of Pennsylvania laid, in 1889, upon public service corporations furnishing transportation for hire, a gross receipts tax of eight mills on each dollar of gross receipts earned wholly within the State. Act of June 1, 1889, P. L. 1889, pp. 420, 431 (Pa. Stat. 1920, § 20,388). That statute has remained unchanged so far as affects the question here involved.[3] It applies equally to every corporation engaged in the same kind of business, and makes no discrimination between foreign and domestic corporations. But neither this specific tax, nor any equivalent tax, is laid upon individuals or partnerships engaged in the same business. Nor is this tax or an equivalent laid upon corporations which supply certain other public services.

The Supreme Court of the State has construed this statute as applicable to all taxicab corporations; and has held the Quaker City Cab Company, a foreign corporation doing an intrastate business in Pennsylvania since the year 1917, liable for the taxes accrued on that business

and Federal Constitution, to place heavier tax burdens on corporations than on individuals. See *Kittanning Coal Co.* v. *Commonwealth*, 79 Pa. St. 100; *Commonwealth* v. *Delaware Division Coal Co.*, 123 Pa. St. 594; *Commonwealth* v. *Germania Brewing Co.*, 145 Pa. St. 83; *Commonwealth* v. *National Oil Co.*, 157 Pa. St. 516; *Commonwealth* v. *Sharon Coal Co.*, 164 Pa. St. 284, 304.

[2] P. L. 1864, p. 218; P. L. 1866, p. 82; P. L. 1867, p. 1363; P. L. 1877, p. 6; P. L. 1879, p. 112; P. L. 1889, p. 420; P. L. 1925, pp. 702, 706.

[3] So far as is material to the present case, the tax goes back to the Act of March 20, 1877, P. L. 6. It was that act, as amended by the Act of June 7, 1879, P. L. 112, which was before this Court in *Philadelphia & Southern Mail S. S. Co.* v. *Pennsylvania*, 122 U. S. 326. The Act of June 1, 1889, P. L. 420, 431, amended the earlier legislation so as to remove its repugnance to the commerce clause.

for the last six months of 1923, which was agreed on as a test period. The Company claims that the statute as construed and applied violates the Federal Constitution. There is no contention that it violates either the commerce clause or the due process clause. The claim is that it denies equal protection of the laws; and the contention is rested specifically upon the ground that the exaction " is not a tax peculiar to corporations."

As the statute applies equally to domestic and to foreign corporations, cases like *Southern Ry. Co.* v. *Greene,* 216 U. S. 400; *Kentucky Finance Corporation* v. *Paramount Auto Exchange,* 262 U. S. 544; *Hanover Fire Insurance Co.* v. *Harding,* 272 U. S. 494; and *Power Manufacturing Co.* v. *Saunders,* 274 U. S. 490, have no application. And no claim is made that the Federal Constitution prevents a State from taxing corporations engaged in one class of business more heavily than those engaged in another. *Southwestern Oil Co.* v. *Texas,* 217 U. S. 114; *Brown-Forman Co.* v. *Kentucky,* 217 U. S. 563; *Heisler* v. *Thomas Colliery Co.,* 260 U. S. 245; *Oliver Iron Mining Co.* v. *Lord,* 262 U. S. 172. The fundamental question requiring decision is a general one. Does the equality clause prevent a State from imposing a heavier burden of taxation upon corporations engaged exclusively in intrastate commerce, than upon individuals engaged under like circumstances in the same kind of business? The narrower question presented is, whether this heavier burden may be imposed by a form of tax " not peculiarly applicable to corporations." That is, by a tax of such a character that it might have been extended to individuals if the legislature had seen fit to do so.

The equality clause does not forbid a State to classify for purposes of taxation. Discrimination through classification is said to violate that clause only where it is such as " to preclude the assumption that it was made in the exercise of legislative judgment and discretion." *Stebbins*

v. *Riley*, 268 U. S. 137, 143. In other words, the equality clause requires merely that the classification shall be reasonable. We call that action reasonable which an informed, intelligent, just-minded, civilized man could rationally favor. In passing upon legislation assailed under the equality clause we have declared that the classification must rest upon a difference which is real, as distinguished from one which is seeming, specious, or fanciful, so that all actually situated similarly will be treated alike; that the object of the classification must be the accomplishment of a purpose or the promotion of a policy, which is within the permissible functions of the State; and that the difference must bear a relation to the object of the legislation which is substantial, as distinguished from one which is speculative, remote or negligible.[4] Subject to this limitation of reasonableness, the equality clause has left unimpaired, both in range and in flexibility, the State's power to classify for purposes of taxation. Can it be said that the classification here in question is unreasonable?

The difference between a business carried on in corporate form and the same business carried on by natural persons is, of course, a real and important one. As was stated in *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107, 161–162, " it could not be said . . . that there is no substantial differ-

---

[4] See *Missouri Pacific Ry. Co.* v. *Mackey*, 127 U. S. 205, 209–210; *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232, 237; *Pacific Express Co.* v. *Seibert*, 142 U. S. 339, 350–355; *Gulf, Colorado & Santa Fe Ry. Co.* v. *Ellis*, 165 U. S. 150, 155–160; *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283, 293–296; *Orient Insurance Co.* v. *Daggs*, 172 U. S. 557, 562–564; *Atchison, Topeka & Santa Fe R. R. Co.* v. *Matthews*, 174 U. S. 96, 104–110; *Muller* v. *Oregon*, 208 U. S. 412, 421–423; *Southwestern Oil Co.* v. *Texas*, 217 U. S. 114, 125–127; *Quong Wing* v. *Kirkendall*, 223 U. S. 59, 62–63; *Fort Smith Lumber Co.* v. *Arkansas*, 251 U. S. 532, 533–534; *Watson* v. *State Comptroller*, 254 U. S. 122, 124–125; *Heisler* v. *Thomas Colliery Co.*, 260 U. S. 245, 254–258.

ence between carrying on of business by the corporations taxed, and the same business when conducted by a private firm or individual. The thing taxed is not the mere dealing in merchandise, in which the actual transactions may be the same, whether conducted by individuals or corporations, but the tax is laid upon the privileges which exist in conducting business with the advantages which inhere in the corporate capacity of those taxed, and which are not enjoyed by private firms or individuals." Because of this difference Congress has repeatedly discriminated against incorporated concerns and in favor of the unincorporated. The Corporation Tax Act of August 5, 1909, c. 6, § 38, 36 Stat. 11, 112, imposed a tax of one per cent on the net income of corporations when a corresponding tax was not imposed upon the income of individuals. Since the adoption of the Sixteenth Amendment the net income of both corporations and individuals has been subjected to taxes of the same nature; but the tax imposed has discriminated heavily against at least many of the businesses which are incorporated.[5]

The imposition of the heavier tax on corporations by means of an annual tax in the form of a franchise tax de-

---

[5] Under the War Revenue Act of October 3, 1917, c. 63, §§ 1, 4, 40 Stat. 300, 301, 302, the normal tax on individuals was 4% while that on corporations was 6%. The Revenue Act of 1918, c. 18, §§ 210, 230, 40 Stat. 1057, 1062, 1075, imposed on individuals a normal tax of 12% for 1918 and 8% thereafter, with sub-normal rates of 6% and 4% respectively; the rate on corporations was 12% for 1918, 10% thereafter; the excess profits tax imposed by § 301 of the same act, 40 Stat. 1057, 1088, applied only to corporations. Under the Act of 1921, c. 136, §§ 210, 230, 42 Stat. 227, 233, 252, the rate on individuals was 8% with a sub-normal rate of 4%, whereas the rate on corporations was to be 10% for 1921, and 12½% for following years. The Act of June 2, 1924, c. 234, §§ 210, 230, 43 Stat. 253, 264, 282, lowered the normal rate on individuals to 6% with sub-normal rates of 2% and 4%, but made no change in the rate to be paid by corporations. The Act of February 26, 1926, c. 27, §§ 210, 230, 44 Stat. 9, 21, 39, further lowered the rate on individuals to 5% with

clared to be for the privilege of doing business in corporate form is common, and since *Home Insurance Co.* v. *New York,* 134 U. S. 594, 606–607, the validity of such a tax has not been questioned. This heavier burden the State may impose by means of an annual franchise tax in addition to ‚the ordinary property and excise taxes imposed upon all persons, natural and artificial. Or it may impose the heavier burden by means of a franchise tax which will be the sole tax upon the corporation. That is, it may make the franchise tax so high as to include both the tax representing the special privilege of doing business in corporate form and the equivalent for taxes borne by natural persons engaged in the same occupation. Few propositions are better settled than the rule that, in determining whether a state tax violates the Federal Constitution, we are to look at the operation or effect of the tax and not at its name or form. *Clark* v. *Titusville,* 184 U. S. 329, 333–334; *Brown-Forman Co.* v. *Kentucky,* 217 U. S. 563, 571; *Interstate Busses Corporation* v. *Blodgett,* 276 U. S. 245. Compare *Atchison, Topeka & Santa Fe R. R. Co.* v. *Matthews,* 174 U. S. 96, 103. Since a State is permitted to impose upon the corporation more than a pro rata share of the common burden of taxation, I find nothing in the Federal Constitution which prohibits it from adopting any of the familiar kinds of taxes as the means of the heavier imposition. Surely, there is nothing inherently objectionable in the long established, commonly used gross earnings tax, which should prevent its being selected for that purpose.

---

sub-normals of 1½% and 3%, but raised the rate of the corporation income tax to 13% for 1925 and 13½% thereafter.

The Report of the Secretary of the Treasury for 1927, p. 48, states: " If we include the tax paid by individuals on the dividends received from corporations, the rate of tax on net corporate income is 15.27 per cent, whereas had all the corporations been taxed as partnerships the average rate of tax on their net income would have been 9.1 per cent."

Why Pennsylvania should have chosen to impose upon corporations a heavier tax than upon individuals or partnerships engaged under like circumstances in the same line of business, or why it should have selected this particular form of tax as the means of doing so, we have no occasion to enquire. The State may have done this, because, in view of the advantages inherent in corporate organization, the Legislature believed that course necessary in order to insure a just distribution of the burdens of government. In *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107, 162, this Court listed the advantages which justify the imposition of special taxes on corporations: " The continuity of the business, without interruption by death or dissolution, the transfer of property interests by the disposition of shares of stock, the advantages of business controlled and managed by corporate directors, the general absence of individual liability, these and other things inhere in the advantages of business thus conducted, which do not exist when the same business is conducted by private individuals or partnerships." [6]

[6] This reason for heavier taxation of corporations was stressed in Congress both in the debate on the proposed amendment to the War Revenue Bill of 1898 taxing corporations on their gross receipts, and in the debate on the corporation tax amendment to the Tariff Bill of 1909. See 31 Cong. Rec. 4964, 5092, 5101; 44 Cong. Rec. 4237. Senator Root stated: " My own state has for many years grouped all corporations within its borders, with certain specific exceptions, in a class upon the revenues of which it imposes a tax imposed on no other members of the community. And it is a late day for us to be told that there is no right in the United States to adopt this old, familiar, general, basis of classification for the purpose of imposing an excise tax. It is founded upon reason, sir, and not alone upon authority." 44 Cong. Rec. 4005–4006.

The states, too, have acted upon this theory. See Annual Report of the Assessors of New York, 1882, pp. 15–17; Communication of the Secretary of State and the Attorney General of Kansas, relating to the bill for an annual franchise tax, 1911.

In proposing the enactment of a tax of one shilling on the pound on the profits and income of concerns with limited liability, April 19,

In Pennsylvania the practice of imposing heavier burdens upon corporations dates from a time when there,[7] as elsewhere in America, the fear of growing corporate power was common. The present heavier imposition may be a survival of an early effort to discourage the resort to that form of organization. The apprehension is now less common. But there are still intelligent, informed, just-minded and civilized persons who believe that the rapidly growing aggregation of capital through corporations constitutes an insidious menace to the liberty of the citizen; that it tends to increase the subjection of labor to capital; that, because of the guidance and control necessarily exercised by great corporations upon those engaged in business, individual initiative is being impaired and creative power will be lessened; that the absorption of capital by corporations, and their perpetual life, may bring evils similar to those which attended mortmain; that the evils incident to the accelerating absorption of business by corporations outweigh the benefits thereby secured; and that

1920, the Chancellor of the Exchequer said: "I justify it on much broader grounds. Companies incorporated with a limited liability enjoy privileges and conveniences by virtue of the law for which they may well be asked to pay some acknowledgment." The statement is quoted in Report of the Secretary of the Treasury for 1920, p. 42.

[7] A commission appointed pursuant to joint resolution of the Legislature of Pennsylvania reported in 1862: "Corporations in this State are very numerous and very powerful. They have not only drawn within their control an immense amount of capital, but they have drawn within their power the entire commerce of the State. . . . The franchises of corporations are property, and the legitimate subject of taxation; in fixing a tax upon corporations these extraordinary privileges, their franchises, constitute the first grounds of the Commonwealth's claim to contribution, and in that consists her right to discriminate in favor of the public." Shortly after this report the Legislature passed the Act of April 30, 1864, P. L. 218, the first of the special taxes on corporations which have since formed an integral part of the revenue system of the State.

the process of absorption should be retarded. The Court may think such views unsound. But, obviously, the requirement that a classification must be reasonable does not imply that the policy embodied in the classification made by the legislature of a State shall seem to this Court a wise one. It is sufficient for us that there is nothing in the Federal Constitution which prohibits a State from imposing a heavier tax burden upon corporations organized for the purpose of engaging exclusively in intrastate commerce; and that there is nothing inherently objectionable in the instrument which Pennsylvania selected for imposing the heavier burden—the gross receipts tax.

For these reasons, I should have no doubt that the statute of Pennsylvania was well within its power, if the question were an open one. But it seems to me that the validity of such legislation has been established by a decision of this Court rendered after much consideration. The contention here sustained differs in no essential respect from that made and overruled in *Flint* v. *Stone-Tracy Co.,* 220 U. S. 107, 161. There, as here, the tax was imposed merely because the owner of the business was a corporation, as distinguished from an individual or a partnership. There, as here, the character of the owner was the sole fact on which the distinction was made to depend. There, as here, the discrimination was not based on any other difference in the source of the income or in the character of the property employed. The cases differ in but two respects, neither of them material. In the *Flint* case the tax was on net income while here it is on gross receipts; and the *Flint* case arose under the Fifth Amendment while the present case arises under the Fourteenth. But a tax on net income is no more " peculiarly applicable to corporations " than is a tax on gross receipts; and in the *Flint* case it was distinctly ruled that " even if the principles of the Fourteenth Amendment were ap-

plicable to the present case," the tax must be upheld. More recently in *Fort Smith Lumber Co.* v. *Arkansas*, 251 U. S. 532, 534, the validity of a state statute discriminating against corporations was sustained, and it was said that " a State may have a policy in taxation," and that " a discrimination between corporations and individuals with regard to a tax like this cannot be pronounced arbitrary, although we may not know the precise ground of policy that led the State to insert the distinction in the law." Compare *Southwestern Oil Co.* v. *Texas*, 217 U. S. 114, 126. In my opinion, the judgment of the Supreme Court of Pennsylvania should be affirmed.

Mr. Justice Holmes concurs in this opinion.

Mr. Justice Stone, dissenting.

That businesses carried on in corporate form may be taxed while those carried on by individuals or partnerships are left untaxed, was the rule broadly applied under the Fifth Amendment in *Flint* v. *Stone-Tracy Company*, 220 U. S. 107, and I can see no reason for not applying it here under the Fourteenth Amendment as well. It is no objection to a taxing statute that the classification is based on two distinct elements—here the doing of business in a corporate form, upheld in *Flint* v. *Stone-Tracy Co.*, *supra*, (and see *Home Insurance Co.* v. *New York*, 134 U. S. 594; *Fort Smith Lumber Co.* v. *Arkansas*, 251 U. S. 532), and the character of the business done as distinguished from other classes of business, upheld in *Southwestern Oil Co.* v. *Texas*, 217 U. S. 114; *Brown-Forman Co.* v. *Kentucky*, 217 U. S. 563; *Heisler* v. *Thomas Colliery Co.*, 260 U. S. 245. For it was decided in *Stebbins* v. *Riley*, 268 U. S. 137, that such a combination of two permissible bases of classification may itself be made the basis of a classification.