### JACKSON v. STATE BOARD OF TAX COM'RS OF INDIANA et al.

#### No. 1188.

District Court, S. D. Indiana, Indianapolis Division.

Feb. 1, 1930.

Samuel Ashby, Smith, Remster, Hornbrook & Smith, and Thompson, Rabb & Stevenson, all of Indianapolis, Ind., McKercher & Link, of New York City, Baker & Daniels, of Indianapolis, Ind., and Nichols, Morrill, Wood, Marx & Ginter, of Cincinnati, Ohio, for plaintiff.

James M. Ogden, Atty. Gen., and Joseph W. Hutchinson, George W. Hufsmith, V. Ed Funk, Deputy Attys. Gen., for defendants.

Before SPARKS, Circuit Judge, and BALTZELL and SLICK, District Judges.

BALTZELL, District Judge.

The bill of complaint in this case challenges the validity of an act of the Indiana General Assembly approved March 16, 1929 (Acts 1929, c. 207, p. 693). For convenience, this act is set out in full in the footnote herein.[1]

---

[1] "Enrolled Act No. 197, House

"An Act requiring licenses for the operation, maintenance, opening or establishment of stores in this state, prescribing the license and filing fees to be paid therefor, and the disposition thereof, and the powers and duties of the state board of tax commissioners in connection therewith, and prescribing penalties for the violation thereof.

"Section 1. Be it enacted by the General Assembly of the State of Indiana, That from and after the first day of July, 1929, it shall be unlawful for any person, firm, corporation, association or copartnership, either foreign or domestic, to operate, maintain, open or establish any store in this state without first having obtained a license so to do from the state board of tax commissioners, as hereinafter provided.

"Sec. 2. Any person, firm, corporation, association or copartnership desiring to operate, maintain, open or establish a store in this state shall apply to the state board of tax commissioners for a license so to do. The application for a license shall be made on a form which shall be prescribed and furnished by the state board of tax commissioners, and shall set forth the name of the owner, manager, trustee, lessee, receiver or other person desiring such license; the name of such store; the location, including the street number, of such store; and such other facts

The bill alleges that plaintiff is engaged in the business of selling groceries, fresh vegetables, and meats at wholesale and retail in the city of Indianapolis, state of Indiana; that he has been thus engaged for a period of more than ten years; that such business is conducted under the name of "Standard Grocery Company," but is owned and operated by the above-named plaintiff, Lafayette A. Jackson; that he is engaged in interstate commerce, in that a substantial portion of the merchandise used by him is purchased in

as the state board of tax commissioners may require. If the applicant desires to operate, maintain, open or establish more than one such store, he shall make a separate application for a license to operate, maintain, open or establish each such store, but the respective stores for which the applicant desires to secure licenses may all be listed on one application blank. Each such application shall be accompanied by a filing fee of fifty cents, and by the license fee as prescribed in section 5 of this act.

"Sec. 3. As soon as practicable after the receipt of any such application, the state board of tax commissioners shall carefully examine such application to ascertain whether it is in proper form and contains the necessary and requisite information. If, upon examination, the state board of tax commissioners shall find that any such application is not in proper form and does not contain the necessary and requisite information, it shall return such application for correction. If an application is found to be satisfactory, and if the filing and license fees, as herein prescribed, shall have been paid, the state board of tax commissioners shall issue to the applicant a license for each store for which an application for a license shall have been made. Each licensee shall display the license so issued in a conspicuous place in the store for which such license is issued.

"Sec. 4. All licenses shall be so issued as to expire on the thirty-first day of December of each calendar year. On or before the first day of January of each year, every person, firm, corporation, association or copartnership having a license, shall apply to the state board of tax commissioners for a renewal license for the calendar year next ensuing. All applications for renewal licenses shall be made on forms which shall be prescribed and furnished by the state board of tax commissioners. No license shall lapse prior to the thirty-first day of January of the year next following the year for which such license was issued, and if, by such thirty-first day of January, an application for a renewal license has not been made, the state board of tax commissioners shall notify such delinquent license holder thereof, by registered mail, and if application is not made for and a renewal license issued on or before the last day of February, next ensuing, the former license shall lapse and become null and void. Each such application for a renewal license shall be accompanied by a filing fee of fifty cents, and by the license fee as prescribed in section 5 of this act.

"Sec. 5. Every person, firm, corporation, association or copartnership opening, establishing, operating or maintaining one or more stores or mercantile establishments, within this state, under the same general management, supervision or ownership, shall pay the license fees hereinafter prescribed for the privilege of opening, establishing, operating or maintaining such stores or mercantile establishments. The license fee herein prescribed shall be paid annually, and shall be in addition to the filing fee prescribed in sections 2 and 4 of this act.

"The license fees herein precribed shall be as follows:

"(1) Upon one store, the annual license fee shall be three dollars for each such store;

"(2) Upon two stores or more, but not to exceed five stores, the annual license fee shall be ten dollars for each such additional store;

"(3) Upon each store in excess of five, but not to exceed ten, the annual license fee shall be fifteen dollars for each such additional store;

"(4) Upon each store in excess of ten, but not to exceed twenty, the annual license fee shall be twenty dollars for each such additional store;

"(5) Upon each store in excess of twenty, the annual license fee shall be twenty-five dollars for each such additional store.

"Sec. 6. Each and every license issued prior to the first day of July of any year shall be charged for at the full rate, and each and every license issued on or after the first day of July of any year shall be charged for at one-half of the full rate, as prescribed in section 5 of this act.

"Sec. 7. The provisions of this act shall be construed to apply to every person, firm, corporation, copartnership or association, either domestic or foreign, which is controlled or held with others by majority stock ownership or ultimately controlled or directed by one management or association of ultimate management.

"Sec. 8. The term 'store' as used in this act shall be construed to mean and include any store or stores or any mercantile establishment or establishments which are owned, operated, maintained or controlled by the same person, firm, corporation, copartnership or association, either domestic or foreign, in which goods, wares or merchandise of any kind, are sold, either at retail or wholesale.

"Sec. 9. Any person, firm, corporation, copartnership or association who shall violate any of the provisions of this act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not less than twenty-five dollars nor more than one hundred dollars, and each and every day that such violation shall continue shall constitute a separate and distinct offense.

"Sec. 10. Any and all expenses incurred by the state board of tax commissioners in the administration of this act shall be paid out of the funds accruing from the fees imposed by and collected under the provisions of this act. All money collected under the provisions of this act, less the expenses incurred in the administration of this act, shall be paid into the state treasury, monthly, by the state board of tax commissioners, and shall be added to and shall constitute a part of the general fund. Of the funds which shall accrue to the general fund during the fiscal year ending September 30, 1929, under the the provisions of this act, the sum of two hundred and fifty thousand dollars shall be transferred to

other states and is shipped to him into the state of Indiana; that he owns and operates at this time two hundred and twenty-five stores, all situated in the city of Indianapolis, state of Indiana; that he has invested in such business a sum of money in excess of

the school relief fund by the auditor of state; and of the funds which accrue to the general fund under the provisions of this act during the fiscal year ending September 30, 1930, the sum of five hundred and fifty thousand dollars, and during the fiscal year ending September 30, 1931, the sum of five hundred thousand dollars, and during each fiscal year thereafter the sum of three hundred thousand dollars shall be transferred to the school relief fund by the auditor of state. The transfer of such amount from the general fund to the school relief fund shall be made on the first day of January, 1930, and on the first day of January of each year thereafter, and no part of the money so transferred shall revert to the general fund at any time. The money so transferred shall be distributed in the same manner as the school relief fund is distributed, as provided by law, except that if any portion of such fund so transferred during any fiscal year is not needed in the regular school relief fund distribution, such excess may be used to apply on deficits existing from preceding years. The term 'school relief fund' as used in this section shall be construed to mean that portion of the common school fund set apart by section 3, chapter 201, of the Acts of the general assembly of 1921, and which is therein designated as a 'relief fund.'

"Sec. 11. The state board of tax commissioners is hereby authorized to employ such clerical assistants as may be necessary to carry out and administer the provisions of this act, and to prepare and print such blanks, forms, reports, receipts and any and all other things which may be necessary to provide for the administration of this act, and to pay any and all such expenses so incurred out of the fund collected under the provisions of this act. The sum of two thousand dollars, or so much thereof as may be necessary, is hereby appropriated out of any money in the general fund of the state treasury not otherwise appropriated, to be available upon the taking effect of this section, and to be used by the state board of tax commissioners in defraying any expenses which may be incurred in the administration and in preparing to administer this act before sufficient funds shall have been collected from license fees, as hereinbefore provided. As soon as a sufficient amount of license fees shall have been collected under the provisions of this act, the two thousand dollars hereby appropriated, or so much thereof as shall have been used, shall be returned to the general fund. Whereas an emergency exists for the immediate taking affect of this section, the same shall be in full force and effect from and after its passage.

"Sec. 12. If any section, provision or clause of this act should be declared invalid, such invalidity shall not be construed to affect the portions of the act not so held invalid.

"Sec. 13. This act, except section 11, shall be in effect from and after the first day of July, 1929."

$200,000; and that his annual sales are in excess of $1,000,000.

The bill further alleges that more than five hundred persons, firms, corporations, associations, and copartnerships, foreign and domestic, are lawfully engaged in the operation of two or more stores in the state of Indiana, and that this case is prosecuted in behalf of all such persons, firms, etc., under Equity Rule No. 38 (28 USCA § 723).

The bill further alleges that the act above referred to is unconstitutional, invalid, and void, for each of the following reasons, to wit:

First. That it violates the provisions of the Fourteenth Amendment to the Constitution of the United States, in that it deprives the plaintiff of property without due process of law and denies to the plaintiff equal protection of the law.

Second. That it violates the provisions of the Fourteenth Amendment to the Constitution of the United States, in that it is an unwarranted abridgement of the rights and privileges guaranteed the plaintiff by such Amendment.

Third. That it violates section 23 of article 1 of the Bill of Rights of the Constitution of the State of Indiana, which reads as follows: "The general assembly shall not grant to any citizen or class of citizens privileges or immunities which, upon the same terms, shall not equally belong to all citizens." Burns' Ann. St. 1926, § 75.

Fourth. That it violates section 1 of article 10 of the Constitution of the State of Indiana, which reads as follows: "The general assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only, for municipal, educational, literary, scientific, religious or charitable purposes, as may be especially exempted by law." Burns' Ann. St. 1926, § 200.

The prayer is that the defendants be enjoined from enforcement of the provisions of such act, and that it be declared unconstitutional and void, as in violation of both the Constitution of the United States and of the State of Indiana.

In accordance with section 13 the act in question, except section 11 thereof, became effective under date of July 1, 1929. There being filed with the bill an application for an interlocutory injunction, a three-judge court was organized, as provided in section

266. Judicial Code, 28 USCA § 380. Under date of June 28, 1929, an interlocutory injunction was issued by this court. A final hearing was had upon the bill under date of January 2, 1930.

The validity of the classification, as provided in section 5 of the act in question, fixing the license fees to be paid by plaintiff and other owners and operators of stores or mercantile establishments within the state of Indiana, presents the main question to be determined by this court. If it is determined that the classification contained in this section does not invade the constitutional rights of the plaintiff, and others similarly circumstanced, then it may be said that no other provisions of the act invade such constitutional rights.

■ Authority is given the state to enact laws which may be enforced in the exercise of its police powers. The act in question cannot be sustained, however, upon that theory. It does not relate to the public health, the public welfare, the public morals, or the public safety. If sustained, it must be solely as a revenue measure. Williams v. Standard Oil Co., 278 U. S. 235, 49 S. Ct. 115, 73 L. Ed. 287, 60 A. L. R. 596; Wingfield v. S. C. Tax Comm., 147 S. C. 123, 148 S. E. 846, 848.

■ The fact that the fee to be collected, as provided in section 5 of the act in question, is denominated a "license fee," for the privilege of engaging in a legitimate business, is immaterial. It does not change or alter the situation. Such fees are considered revenue and are collected by virtue of the laws conferring upon the state the power to tax its citizens for the purpose of raising revenue to support its institutions and otherwise defray the expenses and pay the indebtedness of such state. The Legislature may classify property and occupations for this purpose. It may even select some property or occupation for taxation and omit others, so long as such classification is reasonable and not arbitrary. Quaker City Cab Co. v. Commonwealth of Penna., 277 U. S. 389, 48 S. Ct. 553, 72 L. Ed. 927; Louisville Gas & Elec. Co. v. Coleman, Auditor, 277 U. S. 32, 48 S. Ct. 423, 425, 72 L. Ed. 770; Southern Ry. Co. v. Greene, 216 U. S. 400, 30 S. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247.

■ No general rule can be laid down for determining the question of whether an act is reasonable or is arbitrary. As has been stated in Bell's Gap R. R. Co. v. Penna., 134 U. S. 232, 10 S. Ct. 533, 535, 33 L. Ed. 892:

"All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the state in framing their constitution. But clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition. It would, however, be impracticable and unwise to attempt to lay down any general rule or definition on the subject that would include all cases. They must be decided as they arise." See also Citizens' Telephone Co. of Grand Rapids v. Fuller, Auditor-General of State of Michigan, 229 U. S. 322, 33 S. Ct. 833, 57 L. Ed. 1206.

■ It is not denied on the part of the plaintiff, but rather admitted, that the state has authority to classify occupations for the purpose of taxation; the contention of the plaintiff being that the classification contained in the act in question is arbitrary, and that it deprives him of his constitutional rights. The law is firmly established that the power of classification is within the discretion of the Legislature. The motives which may have actuated it in the enactment of such legislation do not concern the court. It may enact legislation so as to favor some industry or industries. It must, however, apply the same means and methods impartially to all persons of the same class, so that the law will operate equally and uniformly upon all persons under similar circumstances, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation. It cannot arbitrarily select a certain class of persons for taxation and justify its acts by calling it classification. Michigan Cent. R. R. Co. v. Powers, 201 U. S. 245, 26 S. Ct. 459, 50 L. Ed. 744; Southwestern Oil Co. v. Texas, 217 U. S. 114, 30 S. Ct. 496, 54 L. Ed. 688; Gulf, etc., Ry. Co. v. Ellis, 165 U. S. 150, 17 S. Ct. 255, 41 L. Ed. 666; Cotting v. Kansas City Stock Yards Co. and State of Kansas, 183 U. S. 79, 22 S. Ct. 30, 46 L. Ed. 92; Southern Ry. Co. v. Greene, supra; Quong Wing v. Kirkendall, Treas. of Lewis and Clark County, Mont., 223 U. S. 59, 32 S. Ct. 192, 56 L. Ed. 350; Metropolis Theater Co. v. City of Chicago, 228 U. S. 61, 33 S. Ct. 441, 57 L. Ed. 730.

The act in question must be considered as enacted by the Legislature solely as a revenue measure and may be denominated an occupational tax. Having thus concluded,

and having determined that the Legislature has authority to classify occupations for the purpose of taxation, then, logically, the next question to be considered is whether the classification contained in such act, for taxation purposes, is reasonable and will operate equally and uniformly upon all persons under similar circumstances, and rests upon some ground of difference having a fair and substantial relation to the object of the legislation, or whether such classification is arbitrary and deprives the plaintiff of his rights under the Constitution.

The framers of the Constitution of the State of Indiana obviously had in mind the fair and equal treatment of all the citizens of such state with respect to the assessment and collection of taxes. The provisions contained in such Constitution and Bill of Rights would so indicate. The citizens of any state are amply protected against unfair and unequal treatment with respect to the assessment and collection of taxes by the Fourteenth Amendment to the Constitution of the United States. Undoubtedly the principle which later prompted the adoption of that Amendment was also in the minds of those who were responsible for the Constitution of the State of Indiana at the time such Constitution was written and adopted. The "equal protection" clause contained in such Amendment to the Federal Constitution, as applied to taxation, has been fully discussed in the case of Louisville Gas & Electric Co. v. Coleman, Auditor, supra, as follows: "The equal protection clause, like the due process of law clause, is not susceptible of exact delimitation. No definite rule in respect of either, which automatically will solve the question in specific instances, can be formulated. Certain general principles, however, have been established, in the light of which the cases as they arise are to be considered. In the first place, it may be said generally that the equal protection clause means that the rights of all persons must rest upon the same rule under similar circumstances, Kentucky Railroad Tax Cases, 115 U. S. 321, 337, 6 S. Ct. 57, 29 L. Ed. 414; Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 293, 18 S. Ct. 594, 42 L. Ed. 1037, and that it applies to the exercise of all the powers of the state which can affect the individual or his property, including the power of taxation. * * * It does not, however, forbid classification; and the power of the state to classify for purposes of taxation is of wide range and flexibility provided always that the classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' * * * That is to say, mere difference is not enough; the attempted classification 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis.' * * * Discriminations of an unusual character especially suggest careful consideration to determine whether they are obnoxious to the constitutional provision."

In considering the constitutionality of the act in question, as was stated by the Supreme Court of the United States in the case of Quaker City Cab Co. v. Commonwealth of Pennsylvania, supra, the practical operation of such act is to be regarded, and it is to be dealt with according to its effect.

It cannot be disputed that the amount of license fees, or it may be termed taxes, to be paid by the plaintiff, pursuant to the act in question, is determined, not by the amount of capital invested, the amount of sales, or the value of such business, but solely by the number of stores owned by him. Therefore, the classification under this act relates solely to the number of stores owned by any person, firm, etc. The plaintiff owns and operates two hundred and twenty-five grocery stores, all located in the city of Indianapolis, state of Indiana, with a capital investment of approximately $200,000; the annual gross sales are in excess of $1,000,000. Under the provisions of section 5 of the act in question, he will pay a total tax of $5,443 annually.

Under the evidence in this case, many persons, firms, etc., in the state of Indiana, owning but one store, having a much larger sum of money invested, having a much larger gross income per year, and doing a business similar to that of the plaintiff, will be required, under section 5 of such act, to pay a tax of only $3 annually. The evidence also discloses the fact to be that other persons own a greater number of stores than the plaintiff, have a much larger sum of money invested, have a much larger gross income, and are engaged in a similar business, but have only one store located within the state of Indiana. Under this act, such persons will be required to pay a tax of only $3 annually.

Upon the final hearing, experts testified for both the plaintiff and the defendants.

Their testimony was in detail and gave a general history of the origin and growth of what is commonly known as the "chain store." The act in question is evidently intended to levy a heavier occupational tax upon the owners and operators of so-called "chain stores" than that levied upon the owners and operators of a single store. The evidence discloses the fact to be that there are, at the present time, approximately forty-four thousand retail stores within the state of Indiana, of which approximately 8 per cent. are members of a "chain." There are many owners of so-called "chain stores," who are engaged in the same general lines of business as the plaintiff, located in the city of Indianapolis, in the same neighborhood as that in which the plaintiff has a store, or stores, and are his active and aggressive competitors. The fact is, as shown by the evidence, that the competition between "chain store" operators is very active and aggressive.

 The theory of the defendants is that the owners and operators of more than one store do not have the same general interest in the community, do not encourage their employees to maintain permanent homes in the locality where their stores are situated, leave none of their money in such community, buy their goods at a lower price, and, in general, do not have the welfare of the community in which they operate at heart. They are, therefore, not as valuable to the general welfare of the community as the person who owns and operates a single store in such community, and therefore belong to a different class, for occupational tax purposes, than the owner and operator of a single store. Some of the defendants' evidence supported that theory. While that may be true so far as some owners of more than one store is concerned, yet that is not the universal rule, and is not sufficient, within itself, to sustain the classification contained within the Act in question. The fact is, the plaintiff in this case is a resident and citizen, a property owner and a large taxpayer, in the city of Indianapolis—the city in which all of his stores are located. One owner of a single store may take more interest in civic affairs and contribute more to the general welfare of the community in which such store is located, than another owner of a single store in the same community. This alone is not sufficient to place them in different classes for occupational tax purposes.

Statutes similar to the one in question have been enacted in other states. In the state of Kentucky, the Legislature enacted a law which classified, for the purpose of taxation, cash and carry grocery stores on a different basis from those which extended credit to their customers. The Supreme Court of that state, in City of Danville v. Quaker Maid, Inc., 211 Ky. 677, 278 S.W. 98, 43 A. L. R. 590, said in effect that "this difference in this detail of conducting the business affords no reasonable ground for classifying appellee on a basis for taxation purposes different from that of the ordinary grocery store."

In the state of North Carolina, the Legislature enacted a statute exempting the owner of five stores or less from taxation, under such statute, but providing that the owner of more than five stores must pay a tax upon all stores so owned by him. The amount of the tax to be paid by such owner depended solely upon the number of stores so owned. In many respects that law is similar to the act in question in this case. The fact that all stores, under the act in question, are taxed, does not alter the situation. The amount of taxes is based *solely* upon the number of stores owned, and the inequality is as apparent as though the first store was exempt. In the case of Great Atlantic & Pacific Tea Co. et al. v. Doughton, Comm., 196 N. C. 145, 144 S. E. 701, the Supreme Court of the State of North Carolina held that the statute above referred to, taxing the owner of six or more stores, was in violation of the Constitution, both of that state and of the United States.

 All persons engaged in the operation of one or more stores or mercantile establishments within the state of Indiana belong to the same class, for occupational tax purposes, as plaintiff, and should pay the same license fee, regardless of the number of stores owned and operated by them. Any other classification is arbitrary and is in violation of the constitutional rights of the plaintiff. Many persons within the state of Indiana, who own but one store, handle the same line of goods as the plaintiff. In fact, many single store owners are his competitors. The mere fact that one such person reaches his trade by the establishment of more than one store located in various parts of a community, city, etc., does not place him in a different class, for occupational tax purposes, from the person who owns but one store and reaches his trade by means of delivery or requires it to call at his store for the merchandise handled by him. There is no real and substantial difference between

such persons, within the law, granting to the Legislature the authority to classify occupations for the purpose of taxation. The difference is simply in the detail in which such business is conducted, and does not create a different class. Such classification, if enforced, will deny the owner of more than one store of the equal protection of the law, as guaranteed by the Constitution of the United States, and will deprive him of his rights under the Constitution of the State of Indiana. Such classification is not reasonable, and, as stated by the Supreme Court of the United States in Louisville Gas & Electric Co. v. Coleman, Auditor, supra, does not "rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." It is arbitrary, and the act in question is void and in violation of both the Constitution of the United States and of the State of Indiana.

A permanent injunction will be issued in accordance with this opinion.