## Commonwealth v. Bell

*A. B. Shaw*, for Commonwealth.
*Clarence B. Kramer*, for defendant.

SMITH, P. J., March 24, 1939.—Plaintiff's statement of claim avers that David F. Bell, a resident of Clearfield County, applied for and received financial assistance from the Department of Public Assistance during a period beginning with February 1937, and extending through June 1938, the total amount paid being $170; that none of this amount has been repaid, and that on June 23, 1938, the grant of assistance was cancelled because of a transfer of defendant's real estate. An affidavit of defense was filed raising questions of law.

The statement of claim does not show within which of the various classes eligible for assistance the grants made in this case were included. We note that the statement

is in part inconsistent with general facts of a public nature of which the court must take judicial notice, namely that all of these payments were made by the Department of Public Assistance. The Department of Public Assistance first came into existence under the Act of June 24, 1937, P. L. 2003, on July 1, 1937, so it is apparent that five of the monthly payments at $10 each, made prior to July 1937, could not be the subject of recovery under the statement of claim as pleaded.

Recovery could not be had for these five monthly payments from February 1937 and including June 1937, furthermore, for the reason that the only statutory liability which has been pointed out to us and which is applicable irrespective of the class of recipient involved, is under The Support Law of June 24, 1937, P. L. 2045, sec. 4, which reads in part as follows:

"(a) The real and personal property of any indigent person shall be liable for the expenses of his support, maintenance, assistance and burial, incurred by any public body or public agency, whether owned at the time such expenses were incurred or acquired thereafter. Any public body or public agency may sue for moneys so expended, and any judgment obtained shall be a lien upon the real estate of such indigent person, and be collected as other judgments".

According to the well-established rule of construction which is enacted into statute in the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 56, "No law shall be construed to be retroactive unless clearly and manifestly so intended by the Legislature." Section 4 cannot be given a retroactive effect, therefore, and it follows that the five months' payments in question as pleaded show no cause of action.

Under the rule that if any part of a pleading is good a demurrer to it will be overruled: 4 Standard Pennsylvania Practice 61 §43; we must proceed to consider the statement so far as it applies to the remaining portion of the claim beginning with July 1937, and extending

through June 1938. The facts pleaded, namely, the grant of assistance and making of payments in accordance therewith by the Department of Public Assistance subsequent to June 24, 1937, seem to be all that is required by the language of section 4 (*a*), above quoted, of The Support Law of 1937, supra, to establish a statutory liability for reimbursement. While the language used refers to any indigent person, this would not, we think, be required in pleading, as the Public Assistance Law of June 24, 1937, P. L. 2051, in defining the persons to whom assistance may be granted, confines it to indigent persons of the several classes defined. The averment of the grant of assistance by the Department of Public Assistance must therefore include the averment that the same was extended as to an indigent person. Unless some reason outside of section 4 of The Support Law appears, therefore, the statement of claim would seem to aver a good cause of action as to the payments subsequent to its enactment.

The affidavit of defense asserts ten reasons why the statement of claim is not sufficient. The first of these, because the statement was filed subsequent to June 24, 1937, is no good reason and requires no discussion. The second and third are that no promise or contract, express or implied, is averred, but these reasons are insufficient as a statutory liability is relied upon. The fourth is that no legal obligation to repay is averred; but the answer to this is that the statement avers the facts from which the legal obligation arises, and a legal conclusion need not be pleaded. The fifth reason, which refers to the Old Age Assistance Law of June 25, 1936, P. L. 28, and the Public Assistance Law, supra, was withdrawn at the argument, being inapplicable, as the question here is the validity of a different act, namely, The Support Law, sec. 4.

The sixth reason refers to the payments prior to July 1, 1937, which, as we have stated above, are not recoverable as pleaded. The second portion of the sixth reason referring to payments subsequent to July 1, 1937, is that the Public Assistance Law of 1937 does not provide for the

repayment of assistance paid thereunder. This is true, i.e., the Public Assistance Law, although it provides for the different kinds of assistance which may be granted by the department and the different classes of persons eligible therefor, does not include any provision for recovery of benefits. Nevertheless, the two acts, The Support Law and the Public Assistance Law, must be taken to be parts of one general system of administration of assistance by the Commonwealth, and the provision for repayment found in The Support Law, sec. 4, must, upon reading of the two acts, appear to be a condition of any grant made under the Public Assistance Law. Under well-known rules of statutory construction which are found embodied in the Statutory Construction Act of 1937, supra, this result must follow. Section 62 of the Statutory Construction Act states that laws in pari materia shall be construed together, if possible, as one law. Furthermore, we know of no requirement whereby a law authorizing grants of assistance need contain within its own text all the conditions and legal consequences which may follow from the receipt of such grants.

The seventh, eighth, and ninth reasons all raise questions of constitutionality. It is argued that the title of The Support Law is insufficient in that it nowhere indicates that it applies to recipients of old-age assistance nor that it is to be read in conjunction with the Public Assistance Law, and that it contains within it a number of unrelated subjects. None of these objections to the title appears sound. A reading of the title is sufficient answer to these objections, as the language is:

"Relating to the support of indigent persons publicly cared for or assisted; providing for the support of such persons by certain relatives, and for the recovery of public moneys expended for care and assistance from the property and estates of such persons . . .".

This clearly shows that the entire subject of support of indigent persons by the public as well as by relatives

is dealt with, and particularly points out that the act fixes a liability for recovery of public moneys expended. It has been said many times that the title of an act need not be an index or synopsis of its contents, and this act clearly appears from its title to be a general act dealing with the subject of support. The argument so far as it is based upon the grants being of old-age assistance assumes a fact not pleaded, and while plaintiff's counsel likewise assumed that fact in his argument, we have already indicated that we are bound by the pleadings, which do not distinguish the type of assistance involved in this case. In any event, it does not matter for the purposes of the argument what particular class of assistance is involved, for the language of section 4 is general and sweeping rather than particular, and, therefore, must necessarily include old-age as well as other types of assistance. It is argued that several distinct subjects are included, particularly fixing liability for support of indigents on relatives, empowering the court to determine financial ability of relatives to support and to make support orders, empowering a "public body or public agency" to take over and collect funds of the indigent, and providing for process against deserters; but all of these are germane to the general subject matter of support and enforcement of liability for it, and, therefore, do not destroy the unity of the title. None of the cases cited by counsel seems to require discussion.

It is further argued that article III, sec. 18, of the Pennsylvania Constitution renders unconstitutional the fixing of liability as provided for in section 4 of The Support Law. As this section stood at the time of passage of the Act of 1937 it read as follows:

"No appropriations, except for pensions or gratuities for military services and to blind persons twenty-one years of age and upwards, shall be made for charitable, educational or benevolent purposes, to any person or community, nor to any denominational or sectarian institu-

tion, corporation or association." (As amended November 7, 1933, P. L. 1557.)

The present form of this section as amended November 2, 1937, P. L. 2875, which was subsequent to the passage of the act, is as follows:

"No appropriations shall be made for charitable, educational or benevolent purposes to any person or community nor to any denominational or sectarian institution, corporation or association: Provided, That appropriations may be made for pensions or gratuities for military services, and to blind persons twenty-one years of age and upwards, and for assistance to mothers having dependent children, and to aged persons without adequate means of support."

The change in the wording by the amendment of November 2, 1937, makes no difference so far as the argument in this case is concerned. The argument is made that this language does not contemplate a loan but assistance of the same nature as a pension or gratuity; that is, that the grant was an outright gift and could not be the subject of recovery. The argument loses sight of several things which render it completely unsound. In the first place, this constitutional provision makes no grant itself but merely places certain restrictions upon the power of the legislature to make grants of the kind mentioned, except for the limited purposes mentioned. Furthermore, the limitation is upon the power of the legislature to make the grant and not upon its power to place conditions or restrictions upon the acceptance or receipt of a grant. The position argued for amounts to this, that the recipient contends the grant itself is constitutional and he has accepted its benefits accordingly, but contends that the conditions which the legislature placed upon his receiving its benefits are unconstitutional. This would seem to be a complete distortion of the language of the constitutional restriction. Nowhere does it say that the legislature, in providing for assistance or even pensions and gratuities, may not prescribe conditions; nowhere is there

any requirement that such assistance must be entirely in the nature of a gift rather than a loan or advance. The well-understood purpose of this section of the Constitution was to place a limitation upon the expenditure of public money. It is not contended here that the expenditure of public money in these grants of assistance was improper under these constitutional provisions. We are completely at a loss to see how the question whether the recipient is liable out of such private property as he may own to re-pay such assistance is affected by this limitation upon the expenditure of the public funds.

If any authority were needed to sustain the constitu-tionality of the legislative grants of assistance it would seem necessary only to refer to the cases of Busser et al. v. Snyder et al., 282 Pa. 440, Commonwealth ex rel. v. Liveright, etc., et al., 308 Pa. 35, and Poor District Case (No. 1), 329 Pa. 390. In the first of these cases, which declared unconstitutional the Old Age Assistance Act of May 10, 1923, P. L. 189, because the assistance there granted was extended not only to indigent persons but to others outside that class, the Supreme Court declared (p. 453) :

". . . there is no direct prohibition against the use of state money to pay for the care and maintenance of in-digent, infirm and mentally defective persons, without ability or means to sustain themselves, and other charges of a like nature. They become direct charges on the body politic for its own preservation and protection. As such, in the light of an expense, they stand exactly in the same position as the preservation of law and order. To provide institutions, or to compensate such institutions for the care and maintenance of this class of persons, has for a long time been recognized as a governmental duty, and . . . such appropriations may well be sustained on this theory."

The tenth reason advanced is that if these assistance grants were paid by the Commonwealth in contemplation of future recovery, they were paid under a mistake of

law and are therefore not recoverable. We fail to see the applicability of such principle, even if it could apply to the Commonwealth.

It is further argued that to allow recovery would be an infringement of the Fourteenth Amendment of the Federal Constitution, and particularly that it would be a denial of the equal protection of the laws. In connection with this, defendant's counsel refers to section 9(b) of the Public Assistance Law in which, in defining the different classes of eligible recipients of assistance, the class of aged persons is defined, one element being the following:

"(4) has not conveyed or transferred his real or personal property of the value of five hundred dollars ($500.00), or upwards, without fair consideration, within two years preceding the date of making such application."

Aside from the fact that this argument would deny the legislature the right to make reasonable classifications in legislation, which is recognized as proper: Quaker City Cab Co. v. Pennsylvania, 277 U. S. 389; it need only be pointed out that the $500 limit has no application whatever to section 4 of The Support Law, with the validity of which we are here concerned. While it is true, as alleged, that the statement of claim avers the cancellation of the grant to defendant on June 23, 1938, because of a transfer of his real estate on January 1, 1938, to other persons named, that averment would seem to be entirely extraneous to the suit for recovery here. We are not concerned here with what led the administrative officials to discontinue further grants of assistance. What we have is a suit for the recovery of past payments. As we have stated before, the liability for recovery of such past payments is, by section 4 of The Support Law, made absolute, and does not depend in any respect upon the recipient having made such conveyance as is described.

The argument is made further that to hold the recipients of such assistance to be liable to repay them out of

their property is unjust, as in most instances such grants are accepted in the belief that they are outright gifts. The obvious answer to this contention is that it is not for the courts but for the legislature to determine the conditions upon which such grants shall be made, and that we are obliged to interpret the laws as we find them.

### Order

Now March 24, 1939, in accordance with opinion herewith, the affidavit of defense raising questions of law is overruled. Leave is also granted to plaintiff to file an amendment as to the portion of its claim for payments prior to July 1, 1937, to be filed within 10 days hereafter. Defendant is required to file an affidavit of defense within 15 days thereafter.