GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

ALBERT S. HUGGINS, d/b/a HUGGINS CABINET & UPHOL-
STERY, Defendant

Criminal No. 1036-1965
Municipal Court of the Virgin Islands

Div. of St. Thomas and St. John
January 13, 1967

3

PETER J. O'DEA, ESQ., First Assistant Attorney General, Charlotte Amalie, St. Thomas, Virgin Islands, *for Government*

RICHARD B. CONKLIN, ESQ., Charlotte Amalie, St. Thomas, Virgin Islands, *for defendant*

FARRELLY, *Municipal Judge*

## OPINION OF THE COURT

On October 1, 1965, Albert S. Huggins, doing business under the trade name of Huggins Cabinet and Upholstery, was charged criminally by the Government of the Virgin Islands with willful and unlawful failure to pay contributions to the Unemployment Insurance Fund as required by 24 V.I. Code Anno. 308(b),[1] for the quarters ending March 31st, June 30th, September 30th, December 31st, 1962 and March 31st, 1963. If convicted, defendant would be subject to criminal penalties under 24 V.I. Code Anno. 313(b).[2]

The matter did finally come on for trial on December 8, 1965 after two continuances. Peter J. O'Dea, Esq., First Assistant Attorney General appeared to prosecute this action on behalf of the Government. Richard B. Conklin, Esq., appeared for the defendant. When the matter was called up for trial, the defendant entered a plea of not guilty. The theory behind this plea was the unconstitutionality of the sections of the statute under which the defendant is charged, grounded in a denial of "due process" and "equal protection of the laws" under the Organic Act of the Virgin Islands as revised, 48 U.S.C. 50 and 61 (clause 1), 68 Stat. 497 (1954) and of "due process" under the Fifth Amendment to the Constitution of the United States.

The case was submitted on the constitutional issues on the basis of stipulated facts since, as to these, there is no dispute.

All the employees of defendant are alien migrant workers. They were admitted to the Virgin Islands under the Immigration and Nationality Act of the United States, 8

---

[1] "Each employer shall pay contributions equal to 2.1% of wages paid by him during the calendar year with respect to employment . . . ."

[2] "Any [employer] . . . who wilfully fails or refuses to make any such contributions, or other payment . . . shall [upon conviction] be fined not less than $25 nor more than $200, or imprisoned for not longer than sixty days, or both . . . ."

U.S.C. 1101(H)(ii), 1184, on the basis of clearance orders issued by the Virgin Islands Employment Security Agency. These orders certified to the Immigration and Naturalization Service that there was no resident of the Virgin Islands qualified and available for hire by the defendant. These workers were admitted under bond. The moment one of these workers is, to borrow a phrase from the Immigration and Naturalization Service, "out of status" that is to say, the moment his employment is terminated for any reason, he becomes subject to immediate deportation, 8 U.S.C. 1251(a)(9). As alien migrant workers, under bond, these employees of defendant are not eligible to receive unemployment benefits, 24 V.I. Code Anno. 315(a).[3]

Yet, the defendant-employer is required to pay contributions into the Unemployment Fund on the basis of the total number of these employees.

Although the defendant did not raise the constitutional issue in so many words, the constitutional challenge was implicit in his contention "[T]hat the purposes of the Act cannot be served by requiring employers to contribute to the Unemployment Fund for employees that (sic) are ineligible for benefits." As a consequence, defendant concluded, he has committed no crime by failing to pay contributions for his alien workers.

The position of the Government was well-briefed. The Government argues that the Act is a valid exercise of the taxing power; that the ineligibility of the employees of defendant for benefits, although contributions are paid in their behalf, does not excuse the defendant from payment of the contributions; that the determination of the Legislature to exclude alien workers from the benefits of the Act is constitutionally valid because it is based on a reason-

---

[3] [T]he provisions of this chapter shall not be construed as conferring the right of benefits provided for therein to any non-resident or aliens temporarily employed in the Virgin Islands pursuant to any .... bond.

able classification; and, finally, assuming, *arguendo*, that the classification made by the Legislature is open to challenge, defendant has no standing to issue it.

It seems best to discuss the last point raised by the Government first for the reason that if the defendant has no standing to raise the constitutional issue, that would be the end of the matter. He would then be required to stand trial for the crimes alleged in the complaint against him.

██ ██ It is of course axiomatic that only persons who can show injury are in a position to attack the constitutionality of a statute, Antilles Surveys, Inc. v. de Jongh & Hendricks, 5 V.I. 358, F.2d 787 (3rd Cir. 1966) rehearing denied, note 2, cf. Morf v. Bigaman, 298 U.S. 407, 413 (1936), Premier-Pabst Sales Co. v. Grosscup, et al., 298 U.S. 226 (1936). Can the defendant show injury? It is the opinion of this Court that he can. First, the defendant-employer is required to make these contributions, none of which may be deducted in whole or in part from the wages of his employees, 24 V.I. Code Anno. 308(a). Since the contributions are payable only by the employer, it would appear that the employer's right to expend his money as he chooses is limited by the requirement of that section that contributions shall come only from him. But the employer's rights are also affected in a much more vital sense—his right to be free from restraint and incarceration without just cause. Thus injury would be inflicted, upon conviction, by the imposition of a fine or imprisonment, or both, under 24 V.I. Code Anno. 313(b).[4]

██ It is the opinion of the Court that on either or both of these two grounds, the employer is subject to the kind of injury which is a condition precedent to his standing to raise the constitutional issue. Accordingly, it is the opinion

---

[4] "Any [employer] . . . who wilfully fails or refuses to make any such contributions, or other payment . . . shall [upon conviction] be fined not less than $25 nor more than $200, or imprisonment for not longer than sixty days, or both . . . ."

9

of this Court and it is so held that the defendant-employer has standing to raise the constitutionality of the sections which require him to make contributions to a fund from which none of his employees is eligible to receive unemployment benefits.

■ ■ It appears that the disposition of the constitutional hurdle erected by the employer will turn on two principal issues.

First, whether the exclusion of bonded alien employees of the defendant from "benefit-eligibility" is a reasonable classification based on a real and substantial difference having a reasonable relation to the subject of the particular legislation?

Second, whether the payment by the employer of contributions to the unemployment fund based on the wages of workers who are not eligible for benefits amounts to a denial of due process and equal protection?

A close examination of the pleadings and briefs on which the case was submitted including the stipulated facts has satisfied the Court that the defendant does not challenge the power of the Legislature to enact the particular statute as a whole. And it is just as well that the defendant does not. The power of the Legislature of the Virgin Islands, granted by the Congress of the United States, ". . . extend[s] to all rightful subjects of legislation not inconsistent with [Chapter 7] or the laws of the United States made applicable to the Virgin Islands," . . . 48 U.S.C. 1574(a), 68 Stat. 500, as amended 1958. Absent restrictions elsewhere, such a grant of power to the Legislature of the Virgin Islands places it on a par with the Legislatures of the several states as to all matters properly comprehended within the grant, Alton v. Alton, 207 F.2d 667 (1953), 2 V.I. 600, 604 (1953), vacated on other grounds, 347 U.S. 610, 3 V.I. 699, 700 (1955), 48 U.S.C. 1572(g). State legislation of a similar nature with a comparable

classification has, as it will later appear, withstood a similar contention by an employer similarly situated. The Bill of Rights set forth in the Revised Organic Act, 48 U.S.C. 1561, 68 Stat. 497 (1954), 72 Stat. 1094 (1958), provides further and in specific terms that the legislature has power to enact laws for the protection of life, the public health, or the public safety. The public policy which undergirds the Unemployment Compensation statute is not inconsistent with these grants, 24 V.I. Code Anno. 301(a), (b).[5]

 Defendant's claim of the vice of unconstitutionality is directed, as stated earlier, at two sections of the Unemployment Statute: section 308(b) which exacts contributions from defendant on the basis of all of his employees; and section 315(a) which denies to defendant's employees the benefits which the contributions are intended to insure. This is defendant's way of stating that there should be a correlation between the employees for whom contributions are made and those for whom benefits are intended. Couched in the language of constitutional lawyers, defendant argues that the legislative classification, which excludes his alien employees from receiving unemployment benefits even though he pays contributions for them on a *per capita* basis, is arbitrary; and that such a classification is not based upon any real and substantial difference having a rational relation to the subject of the particular legislation.

It may be well to begin our analysis by adverting once again to the public policy which pervades the unemployment statute and by reciting some of the relevant rules of law.

---

[5] "[T]he Legislature . . . declares that, in its considered judgment, the public good and the general welfare of the people of the Virgin Islands require the enactment of this measure for the compulsory setting aside of reserves to be used for the benefit of unemployed persons", thus avoiding "[e]conomic insecurity due to unemployment" [which in turn would constitute] "a threat to the health, morals, and welfare of the people of the Virgin Islands . . . ."

Section 301(a) reads: "Economic insecurity due to unemployment is a threat to the health, morals, and welfare of the people of the Virgin Islands . . . .

The systematic accumulation of funds during periods of employment from which benefits may be paid for periods of unemployment would sustain the morale and conserve the skills and standards of living of those who became unemployed, by enabling them to meet their essential expenses for a reasonable period until they are able to obtain suitable work. Essential consumer purchasing power would thereby also be maintained, thus helping to sustain the confidence of the community and the general level of economic activity. The Legislature therefore declares that, in its considered judgment, the public good and the general welfare of the people of the Virgin Islands require the enactment of this measure for the compulsory setting aside of reserves to be used for the benefit of unemployed persons.

(b) [This act] shall be liberally construed to accomplish its purpose to promote employment security by providing through the accumulation of reserves for the payment of compensation to individuals with respect to their unemployment."

With this public policy declaration as a point of take off, it may now be useful to state some of the relevant rules of law.

This Court may not declare invalid the legislative discrimination which is here in issue unless, viewed in the light of facts known to the Legislature or generally assumed, the discrimination is of such a character as to preclude the assumption that the classification rests upon a rational basis within the knowledge and experience of the legislators. Such a statutory discrimination will not be set aside as a denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it, Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed 131 (1915). The

power of the Virgin Islands Legislature which, under authorities already cited, is on a parity with the states, to discriminate against aliens on public works and in the exploitation of natural resources has been recognized, Ibid.; Heim v. McCall, 239 U.S. 175. It has also been held that if work, though private, is such that the exclusion of aliens is in fact necessary to the protection of the public welfare, such exclusion is within the police power of the territory, People v. Crane, 214 N.Y. 154, 108 N.E. 427, aff'd 239 U.S. 195, 60 L.Ed 218, 36 S.Ct. 85.[6]

The "equal protection" clause of the Revised Organic Act does not detract from the right of the territory justly to exert its taxing power or prevent it from adjusting its legislation to differences in situation or forbid classification in that connection; but it does require that the classification not be arbitrary, but based on a real and substantial difference having a reasonable relation to the subject of the particular legislation, Quaker City Cab Co. v. Pennsylvania, 277 U.S. 389, 48 S.Ct. 553, 72 L.Ed 927 (1928). The constitutionality of state social security acts, which include provisions for unemployment compensation, have been upheld in general, Carmichael v. Southern Coal & Coke Co., 301 U.S. 495 (1937); Helvering v. Davis, 301 U.S. 619.

It is also to be borne in mind that it is not a valid objection to the payment of unemployment tax or contributions, conforming in other respects to the "due process" and "equal protection" clauses of the Revised Organic Act and the "due process" clause of the Fifth Amendment of the Constitution of the United States and devoted to a pub-

---

[6] As a matter of fact, the Virgin Islands has adopted a Resident Preference Statute, 24 V.I. Code Anno. 125–136 (1964), which gives preference in private employment to residents, over bonded alien workers, if the resident is occupationally qualified. This Court has held only recently that there is nothing inherently unconstitutional about either the policy or language of this particular law, Government of the Virgin Islands v. Caneel Bay Plantation, Inc., Civil No. 180–1966, 5 V.I. Rep. 655· (1966).

lic purpose, that the benefits paid and the persons to whom they are paid are unrelated to the persons taxed, Carmichael v. Southern Coal & Coke Co., supra, page 521.

The "due process" clause of the Fifth Amendment "restrains only such discriminatory legislation by Congress as amounts to a denial of due process," Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375 (1943). Since the Legislature of the Virgin Islands is bound by the same restriction in that it exercises legislative power which is delegated to it by the Congress and, in addition, both the "due process" and "equal protection" clauses of the Revised Organic Act of the Virgin Islands operate as limitations on the exercise of legislative power, the same rule would apply to our territorial Legislature.

Finally, [a] fundamental tenet of judicial review is that not the wisdom or policy of legislation, but only the power of the Legislature, is a fit subject for consideration by the courts, Granville-Smith v. Granville-Smith, 349 U.S. 1, 75 S.Ct. 553, 3 V.I. 701, 716 (1955) Mr. Justice Clarke dissenting.

With these standards in mind, let us apply them to the facts of this case. It is the opinion of this Court that the Legislature has the power to enact the statute as a whole. The legislative determination to exclude aliens from the classification of beneficiaries does rest on a rational basis. For one thing, non-resident or bonded workers may be employed only to supplement the labor force of available and qualified resident workers, 24 V.I. Code Anno. 126. The moment a bonded worker becomes unemployed or "out of status", he ". . . shall depart from the [Virgin Islands] . . . immediately", 8 U.S.C. 1251(a)(9). It would follow necessarily that if the bonded alien worker were eligible for unemployment benefits, once he has departed from the Virgin Islands, as he must, his unemployment checks would have to be forwarded to Antigua, St. Kitts, or wherever

14

else the alien migrant worker regards as home. The cashing of unemployment checks negotiable in United States currency or its British West Indian equivalent,[7] and the consequent expending thereof in the island-home of the worker can hardly be said to be maintaining [e]ssential consumer purchasing power [in the Virgin Islands] . . . thus helping to sustain the confidence of the [Virgin Islands] community and the general level of economic activity. Nor can it be said that the payment of unemployment benefits to aliens, from funds which have been systematically accumulated during periods of employment, would sustain the morale and conserve the skills and standards of living of the Virgin Islands residents who have become unemployed. Nor would these payments to alien workers in their island-home enable them to meet their essential expenses in the Virgin Islands until they are able to obtain suitable work. They would have left the territory.

█ It is therefore the opinion of the Court that the classification of beneficiaries which excludes migrant alien workers is not arbitrary. It is indeed based on a real and substantial difference—a difference between residents and aliens on one hand; and another difference between the expenditure of unemployment checks in the Virgin Islands and in the other islands on the other. These real and substantial differences are reasonably related to the subject of the particular legislation, to wit, the maintenance of essential consumer purchasing power, thus helping to sustain the confidence of the community, the general level of economic activity, the sustenance of the morale and conservation of the skills and standards of living of unemployed residents of the Virgin Islands. These objectives are accomplished by enabling residents, through the disbursement of unemployment funds to meet their essential expenses for a

---

[7] The currency of many of the islands from which most of our migrant workers come is the British West Indian dollar (B.W.I. $), which is equal to $ U.S. 0.5833.

reasonable period until they are able to obtain suitable work.

On the issue of the exaction of the unemployment tax on the *per capita* basis of the alien employees of defendant who are not eligible for benefits, the short answer thereto has already been given. We repeat it here for emphasis and disposition. It is well-established in respect of the assessment and payment of taxes, that it is not a valid objection to a tax that the benefits paid and the persons to whom they are paid are unrelated to the persons taxed and the amount of taxes which they pay, Carmichael v. Southern Coal & Coke Co., 301 U.S. 495; Thomas v. Gay, 169 U.S. 264, 280; Carey & Hamilton v. Snook, 281 U.S. 66, 68 A.L.R. 194.

This statute and the specific sections under attack were enacted in the exercise of the police power of the Legislature. This power includes the right to enact laws in the interest of the public health, the public safety, the public morals and the general welfare.

In these circumstances, this Court cannot truly say that these sections so lack a reasonable basis as to be arbitrary. Contributions are exacted from defendant as well as from other employers to effectuate some regulation of the evils of unemployment . . . . This is a subject within the scope of legislative competence; minor inequalities are not decisive against it. Cf. Howes Bros. v. Massachusetts Unemployment Compensation Commission, 5 N.E.2d 720, 726, 727 (Mass. 1936).

It is a salutary principle of judicial decision long emphasized and followed by [courts] that the burden of establishing the unconstitutionality of a statute rests on him who assails it, Truax v. Raich, supra. Although defendant has not sustained his burden, the Court, by its own independent research and analysis, is of the opinion that the constitutional challenge lacks substance.

Defendant has stated affirmatively that [a]n exhaustive search of the authorities has failed to reveal any precedents. [That] [t]he situation in the Virgin Islands is unique insofar as employment of alien workers is concerned. Not so. The precise question involving imported Mexican workers was raised in California in 1951 by an employer. Like this Court, the court there rejected the employer's contention, Vollman v. California Employment Stabilization Commission, 104 Cal.2d 94, 231 P.2d 137 (Calif. 1951), California Employment Commission v. Los Angeles Downtown Shopping News Corp., 24 Cal.2d 421, 150 P.2d 186 (Calif. 1944).

██ ██ One final word. The thrust of defendant's objections may very well be against the wisdom of these legislative classifications. Be that as it may, this Court may not inquire into the "wisdom or unwisdom" of a legislative enactment, as the late Mr. Justice Frankfurter once phrased it. If defendant's objections are really cast in that posture, the remedy open to him is to address his claim for relief to another forum, to wit, to the Legislature of the Virgin Islands.

It is perhaps clear by now that this Court is inclined to the view and it is so held that the classifications under attack are valid. They are not capricious or unreasonable, and they do not offend against either the Fifth Amendment to the Constitution of the United States or the "due process" and "equal protection" clauses of the Revised Organic Act of the Virgin Islands.

The complaint which has charged this defendant with willful failure to pay unemployment contributions is legally sufficient. The defendant is therefore left on his own recognizance and he shall hold himself in readiness to stand trial.

Let order issue in accordance with this opinion.